## HENRY BIBEAU v. FRED W. PEARCE CORPORATION.[1]

January 6, 1928.

No. 26,416.

**Evidence sufficient to support finding by jury.**

1. The evidence is sufficient to support a finding by the jury that there was an unusually violent jerk in the operation of a roller-coaster train, resulting in injuries to a passenger thereof.

**Res ipsa loquitur.**

2. In such a case the doctrine of res ipsa loquitur is applicable.

**What proof is admissible under allegations of complaint.**

3. The allegations of the complaint are such as to permit proof authorizing a recovery because of: (1) Negligent construction and the operation by gravity of a roller-coaster having cars and trains of such character and weight with such high and steep inclines; (2) an unusual jerk due to an obstacle on the track or other cause; or (3) lack of warning as to perils.

[1]Reported in 217 N. W. 374.

**Highest degree of care required of proprietor of roller-coaster.**

    4.  The proprietor of a roller-coaster must exercise the highest degree of care and caution for the safety of his passengers and do all that human foresight can reasonably require consistent with its practical operation to prevent accidents to them.

**Question for jury.**

    5.  Upon the record the question of contributory negligence was for the jury.

Theaters and Shows, 38 Cyc. p. 269 n. 60; p. 270 n. 66, 69; p. 271 n. 71.

See note in 22 R. C. L. 617.

Action in the district court for Ramsey county to recover damages for injuries sustained by the minor daughter of plaintiff. A verdict was directed for defendant, and plaintiff appealed from an order, Hanft, J. denying his motion for a new trial. Reversed.

*Briggs, Weyl & Briggs,* for appellant.

*Cobb, Wheelwright, Hoke & Benson* and *R. A. Scallen,* for respondent.

*Snyder, Gale & Richards, W. C. Fraser, Donald E. Bridgman,* and *Loren Risk* filed a brief amici curiae in support of appellant.

WILSON, C. J.

Appeal from an order denying a new trial after a directed verdict for defendant.

At Wildwood Park on White Bear lake defendant operates a roller-coaster on which the patron gets rides and thrills for a consideration. The trackage is about 3,500 feet. A trip is made in 90 seconds. Its maximum speed may be 60 miles per hour. A train consists of three cars, each car having three seats or accommodation for six persons. Each train is pulled by electric power to the top of a 65-foot incline, where it is automatically turned loose from the pulling chain. It is then propelled by force of gravity along the trip and back to the starting point. Its first drop is at an angle of 45 degrees and the train descends substantially to the ground. Its speed or momentum carries it up the next incline, the

top of which is just enough lower than the preceding peak to let the train continue going over. There are six hills or inclines. As the train comes down the incline into the "dip" it hits the upgrade, and under the law of gravitation the train is suddenly checked in speed and the inertia or tendency of the person in the car is to continue forward. It therefore requires some effort on the part of the passenger to prevent being pitched forward. In anticipation of this each seat has in front of it at a convenient place for the passenger a handhold consisting of a one and one-half inch iron pipe which is supposed to stand the weight of the jar or pull up to the extent of 1,000 to 1,500 pounds. The passenger is supposed to sit erect, not lean forward, and brace himself with his feet and by holding to the handle. If he is not strong enough to resist the throw forward he is liable to get a bump. The thrill of the ride comes from the speed, curves and ups and downs.

Plaintiff's minor daughter was a passenger. At the top of the first hill she saw a sign, "Don't lean forward. Sit erect." She says she followed the directions and held steadily to the handhold; that she braced her feet; that she sat with her arms out stiff holding onto the bar; that at the bottom of the first drop she got "an awful jerk" which swung her forward, bumped her nose on the bar and rendered her unconscious. She suffered a depressed fracture of the nose, which means that the right nasal bone was pushed in with such force as to push the left nasal bone out. She had considerable discoloration about both eyes. She was later put to sleep and subjected to a surgical operation by a nose specialist.

A girl companion, who had ridden on this device before and who sat beside Miss Bibeau at the time of the accident, testified:

"We got this violent jerk. * * * I knew what to expect * * * I had never got such a violent jerk as I did that time. * * * Miss Bibeau fell forward and I heard her scream, and after that she fell down in her seat, and I put my arm around her to hold her in the car, and then when we finished the ride some boys that were riding in the car behind us picked her up and carried her into the little house. * * * It was an unusual jerk. * * * I know she was

sitting rigid, * * * and I know that she was holding on to the bar, * * * and feet braced."

Immediately after the accident defendant's representative administered ice water to Miss Bibeau's bleeding nose after applying smelling salts. Miss Bibeau testified that she had no warning except the sign mentioned.

1. The evidence would support a finding of the jury that the passenger experienced an unusually violent jerk which caused her injuries. One would hardly suppose it possible for defendant to continue the roller-coaster business if such accidents were ordinary occurrences. The record discloses more than her exclamation of "awful," which with other expletives was minimized in Foley v. Boston & Maine Railroad, 193 Mass. 332, 79 N. E. 765, 7 L.R.A. (N.S.) 1076. In addition we have the statement of an experienced patron that it was an "unusual jerk" and that she had never experienced such a "violent jerk." This is supported by what actually happened to the passenger, who did all that she was told to do to protect herself.

2. The doctrine of res ipsa loquitur and its rules of application have recently been discussed by us. Heffter v. Northern States Power Co. supra, p. 215. Under the rules there stated and supported by the authorities we now cite, we hold that the rule of res ipsa loquitur is applicable to the instant case. O'Callaghan v. Dellwood Park Co. 242 Ill. 336, 89 N. E. 1005, 26 L.R.A. (N.S.) 1054, 134 A. S. R. 331, 17 Ann. Cas. 407; Carlin v. Smith, 148 Md. 524, 130 A. 340; Sand Springs Park v. Schrader, 82 Okl. 244, 198 P. 983, 22 A. L. R. 593, see note, p. 617; Jackson v. Dreamland Coaster Co. (N. J.) 135 A. 56; Tennessee State Fair Assn. v. Hartman, 134 Tenn. 159, 163, 183 S. W. 735. Respondent directs our attention to a contrary holding in Pointer v. Mountain Ry. Const. Co. 269 Mo. 104, 189 S. W. 805, L. R. A. 1917B, 1091, where the application of the rule was rejected because: (1) The state of Missouri holds the doctrine inapplicable where specific acts of negligence are pleaded—a rule, as pointed out in Heffter v. Northern States Power Co. supra, p. 215, which was rejected by us in Kleinman v. Banner

Laundry Co. 150 Minn. 515, 186 N. W. 123, where general negligence is alleged, as in the instant case; and (2) the proofs failed to show an unusual occurrence.

The application of the maxim called for explanation and required the case to go to the jury. Hence there must be a reversal.

3. The allegations of the complaint are broad enough to support the claim that: (1) There was negligence in constructing and operating by gravity a roller-coaster having cars and trains of such character and weight with such high and steep inclines; (2) possibly the unusual jerk was due to an obstacle on the track or to other causes; or (3) that the passenger was injured because of failure adequately to warn her of the dangers involved. If the roller-coaster were properly constructed defendant might possibly have been able to show as a fact that the action of its cars or trains, propelled by gravity, is controlled by unchallenged and unvarying physical laws, but neither has been made to appear upon the present record.

If the case is carried to the jury by the doctrine of res ipsa loquitur alone (Heffter v. Northern States Power Co. supra, p. 215), defendant has the opportunity to exonerate itself from negligence.

The record discloses a situation which leads us to the conclusion that new and credulous patrons seeking thrills on a roller-coaster of the character of this one are subjected to much greater danger than is generally realized.

4. In the maintenance of a place of amusement the proprietor is required to use due care. Attebury v. Jones, 161 Minn. 295, 202 N. W. 337; Doerfer v. North Side Spiritual Church, 169 Minn. 443, 211 N. W. 678. The operation of a roller-coaster carries additional dangers and risks. In proportion to the degree of danger to others must be the care and diligence to be exercised. Where the danger is great the utmost care and diligence must be employed. The mere fact that the passenger rides for pleasure should not lessen the degree of care commanded by the risk involved. Many people ride on railway trains on pleasure trips. The roller-coaster is operated for profit. The perils to which the passenger is exposed and not

the occasion of being a passenger is the most reliable criterion to determine the degree of care to be exercised. The structure of a roller-coaster and its operation carry risks which the owner and operator are bound to anticipate and to protect against so far as they are not necessarily incidental thereto. The risks should be minimized to the extent that reasonably prudent men might foresee the necessity for so doing. Patrons have a right to assume that they are not to be exposed to those risks which might have been reasonably anticipated by the management. The duty involves care commensurate to the risk involved. The rule is now quite well established that the proprietor of a roller-coaster must exercise the highest degree of care and caution for the safety of his passengers and do all that human foresight can reasonably require, consistent with its practical operation, to prevent accidents to them. O'Callaghan v. Dellwood Park Co. 242 Ill. 336, 89 N. E. 1005, 26 L.R.A. (N.S.) 1054, 134 A. S. R. 331, 17 Ann. Cas. 407; Tennessee State Fair Assn. v. Hartman, 134 Tenn. 159, 183 S. W. 735; Best Park & Amusement Co. v. Rollins, 192 Ala. 534, 68 So. 417, Ann. Cas. 1917D, 929; Sand Springs Park v. Schrader, 82 Okl. 244, 198 P. 983, 22 A. L. R. 593 and 610, 660. Such is the rule of common carriers. 1 Dunnell, Minn. Dig. (2 ed.) § 1261. The rule which subjects the roller-coaster and the common carrier to the same degree of care rests upon principle and is supported by a sound public policy.

5. Upon the record before us the claim of contributory negligence as a matter of law cannot be sustained, and defendant was not entitled to more than to have that question submitted to the jury.

Reversed.