FREDERICK F. BRENNAN, JUNIOR, *vs.* OCEAN VIEW
AMUSEMENT COMPANY.

Suffolk.    January 16, 1935. — February 26, 1935.

Present: RUGG, C.J., CROSBY, FIELD, LUMMUS, & QUA, JJ.

*Negligence,* Of proprietor of amusement device, Res ipsa loquitur, Contributory, Invited person, Assumption of risk, Contractual limitation of liability. *Deceit. Carrier,* Of passengers. *Evidence,* Competency, Relevancy.

The proprietor of a roller coaster at an amusement resort is not an insurer of the safety of his patrons with respect to either the construction of the roller coaster or the manner of its operation.

One, who sustained personal injuries while riding as a patron on a roller coaster at an amusement resort, could not maintain an action against the proprietor of the roller coaster based on alleged false representations that it was safe to ride upon, where the evidence showed merely that the plaintiff had seen a sign in front of it reading "15c Safe Sane Sensible 15c" and there was no evidence that he relied upon the sign as a factor inducing him to ride on the roller coaster.

The proprietor of a roller coaster at an amusement resort is not a common carrier of his patrons and does not owe them the high degree of care which a common carrier owes to its passengers.

Although the proprietor of a roller coaster at an amusement resort owes to his patrons, as persons invited to ride thereon for hire, merely the duty of exercising reasonable care in the circumstances, it properly may be found that the quantity of care on his part which is reasonable is great because of the great likelihood of serious consequences resulting to his patrons from his failure to exercise adequate care.

Where the evidence at the trial of an action for personal injuries against the proprietor of a roller coaster at an amusement resort warranted a finding that, while the plaintiff was riding on the roller coaster as a patron of the defendant, strapped in the car by a heavy harness belt which had been inspected by the defendant's attendant before the car started, he was thrown out of the car over its side or back by a

jerk as it went around a curve, although he then had hold of the belt with both hands and although the sides and back of the car were approximately as high as his armpit as he sat in the car, further findings were warranted, whether or not the belt broke, that the jerk was extraordinarily violent and was caused by some defect in the construction or maintenance of the structure or track of the roller coaster and that such defect was due to or permitted to continue through negligence of the defendant.

A ruling that the plaintiff was guilty of contributory negligence as a matter of law was not justified at the trial of the action for personal injuries above described by evidence that the plaintiff had been waving his hand and shouting previous to his being thrown from the car and that he held onto the belt instead of an iron bar in front of him which was there for passengers to take hold of to steady themselves.

The questions, whether the proprietor of an amusement device had employed adequate means to warn a patron that the proprietor's invitation to him to use the device was limited to a use at the patron's risk, and, accordingly, whether the attempted limitation was binding on the patron, were for the jury at the trial of an action against the proprietor for personal injuries sustained by the patron while using the device, on evidence that the plaintiff purchased of the defendant a ticket having the appearance of a mere check or token but having printed on its face the words, "The person using this ticket assumes all risk of personal injury"; that, although the plaintiff knew there was printing upon the ticket, he did not read it, but put it in his pocket until it should be taken up; and that the attempted limitation was not brought home to him in any other way.

At the trial of an action for personal injuries, there was no error in the exclusion of evidence, offered by the plaintiff, of previous accidents "similar in nature" to the one in which the plaintiff was injured.

At the trial of an action against a corporation which was the proprietor of a roller coaster at an amusement resort, for personal injuries sustained by a patron of the defendant when he was thrown out of a car in which he was riding, there was no error in the exclusion of evidence, offered by the plaintiff, that one of the defendant's attorneys had been unable to find any officer or employee of the defendant who knew whether a safety belt by which the plaintiff was strapped in the car at the beginning of the ride was fastened or unfastened at the end of the ride.

TORT. Writ dated January 17, 1930.

The action was tried in the Superior Court before *Sisk*, J. Material evidence is described in the opinion. The attempted limitation, printed on the face of the ticket sold to the plaintiff, was in the following language, "The person using this ticket assumes all risk of personal injury, loss or damage to property."

The judge ordered verdicts for the defendant on all counts of the declaration. The plaintiff alleged exceptions.

*W. R. Cook,* (*F. B. Frederick* with him,) for the plaintiff.

*J. N. Clark,* for the defendant, submitted a brief.

QUA, J. This is an action of tort to recover damages for personal injuries sustained by the plaintiff on May 27, 1929, as a result of being thrown from one of the cars on a sharp curve of the "Derby Racer," a roller coaster operated by the defendant at Revere Beach. The declaration is in six counts. Counts 1 and 5 do not allege negligence, but appear to be based upon the theory that the defendant was an insurer of the safety of its passengers. Counts 3 and 4 are based upon alleged false and fraudulent representations that the roller coaster was safe to ride upon. Count 2 alleges that the defendant was a common carrier and was negligent in the operation of the roller coaster, and count 6 alleges in general terms negligence of the defendant causing the plaintiff to be thrown from the car in which he was riding. At the close of the plaintiff's evidence the judge allowed the defendant's motion that a verdict be directed for the defendant on each count.

The ruling was clearly right as to counts 1 and 5. There is no warrant for the contention that the proprietor of such an amusement resort, to whatever standard of care he may be bound, is an insurer as to either defects in construction or manner of operation. The ruling was also right as to counts 3 and 4. The only evidence under these counts was that the plaintiff had seen a sign in front of the "Derby Racer" reading "15c Safe Sane Sensible 15c." There was no evidence that the plaintiff relied upon this as a factor inducing him to ride. He had ridden before and knew in general what the racer was like from personal experience. The defendant was not a common carrier. It did not perform a public service in transporting passengers from one point to another. It merely furnished entertainment on its own premises. It would hardly be contended that the proprietor of a merry-go-round, for example, is a common carrier. See *Clarke* v. *Ames,* 267 Mass. 44, 47. Without this, count 2 includes nothing not also covered

under the broader language of count 6. Whether there was any error in directing a verdict for the defendant depends therefore upon whether there was any evidence to go to the jury under count 6, which is based on negligence. We consider the case on that footing.

The "Derby Racer" was constructed in the form of a figure eight with a series of dips and rises and sharp curves on which the tracks were "banked." There were two tracks, which for the most part paralleled each other a few feet apart. The cars, containing three seats each, ran in "trains" of two cars to the train. They were hoisted by power to the top of the structure and then proceeded by gravity over the dips and rises and around the curves until they reached the starting point. No attendant rode on the cars, and they were not equipped with brakes. The racing feature was introduced by starting two trains at the same time, one on each track, the tracks being so laid out that as the two trains proceeded down the course, first one and then the other would forge ahead. As the cars ran rapidly and without any means of controlling them from the time they left the top until they reached the bottom, it is plain that their safe and successful operation must depend to a large degree upon proper construction of the tracks and their maintenance in good repair and at the proper grade and alinement. The car seats were constructed with sides which came up "just under the arm pit" of the rider, and the backs were a little higher. Each seat was fitted with a two inch heavy leather harness belt in two parts, one part being fixed at each side of the seat and one part being equipped at the free end with a heavy metal snap hook which could be attached to one of several metal rings on the free end of the other part so as to make a continuous belt over the laps of the passengers which was to some extent adjustable according to the number and sizes of the passengers. In addition there was an iron bar movable on pivots which passengers could take hold of to steady themselves.

On the evening of the accident the plaintiff, a young man about twenty-seven years old, and six other young

men, who were in a group with him, bought tickets, and took seats in two trains which were to race each other. Some of the party got into one train and some into the other. The plaintiff rode alone in the back seat of his train. From this point on the jury could have found, accepting that aspect of the evidence most favorable to the plaintiff, but charging his own admissions against him, the following: He fastened and snapped the strap across in front of him in the middle ring, and an attendant whose duty it was to inspect the straps looked at it. It was fairly tight across his lap. The first part of the trip was accomplished without any unusual occurrence. The ride was a hilarious one with shouting and waving of hands from one car to the other. The plaintiff had been waving with one hand and holding the strap with the other. His train had just passed its competitor and was going up grade toward a curve. He was sitting in the middle of the seat. There were several jerks going round the curve. He then held the strap with both hands. There was another jerk, and he was lifted. The strap seemed to slide through his hands. That was the last he remembered until he came to after the accident. He did not hold on to the bar, although he could have done so, and it would have been a much firmer brace than the strap, if there was a pull to the side. He held the strap only. He had the impression that it was still in position immediately before the accident. He did not unfasten the snap at any time. He did not stand up and could not do so with the strap in the position in which it was. He had not been warned to hang on to the bar instead of the strap. He knew what the bar could be used for; "that was rather obvious." There was other evidence that the plaintiff was thrown from the car in which he was riding on to the track in front of the other train and was seriously injured. After the accident there was "quite a scar" on the back of his left hand in the fleshy part between the thumb and finger. The train proceeded on to the end of the course without further incident. There was evidence that the usual speed of the trains at that particular curve was fifteen or twenty

miles an hour, and a witness testified that in his opinion at the time of the accident this train was going twenty-five miles an hour.

Having invited the plaintiff to ride for hire, the defendant owed to him the duty of exercising reasonable care under the circumstances. It has been held in a number of jurisdictions that the proprietor of a roller coaster or similar device owes to his patrons the same high degree of care which a common carrier owes to a passenger. See *O'Callaghan* v. *Dellwood Park Co.* 242 Ill. 336; *Best Park & Amusement Co.* v. *Rollins*, 192 Ala. 534. And see also *Hinds* v. *Steere*, 209 Mass. 442, 444. But our own decisions have not so expressed the rule with regard to amusement devices which might be thought equally dangerous (see *Sullivan* v. *Ridgway Construction Co.* 236 Mass. 75; *Kushner* v. *McGinnis, ante,* 326), and we prefer not to treat such cases as exceptions. Nevertheless, wherever there is a duty to exercise care, "The quantity of care required of a person increases with any increase in the likelihood of harmful consequences to others if adequate care is not used." *Adams* v. *Dunton*, 284 Mass. 63, 66. A jury would be justified in holding the proprietor of a roller coaster to a high degree of care, because the likelihood of serious consequences might be very great.

In this case the structure and the cars were entirely within the control of the defendant. If the jury fully believed the plaintiff, they could have found that while riding in a proper manner on a seat intended for his use, strapped in with the approval of the attendant, and while holding the strap with both hands, the plaintiff was thrown either forward through or over the strap or over the side of the seat, which was nearly as high as his arm pit, or over the back, which was higher still, on to the next track by a sudden jerk of the car. We think that if they believed the plaintiff up to this point, it would have been open to them to draw the further inferences that such a jerk must have been so very violent and abnormal as to fall beyond the class of usual incidents even of a ride on a roller coaster and beyond the risks assumed by the plain-

tiff when he became a passenger, and that it did not occur through any fault of the plaintiff or of other passengers, but was due to some defect in the construction or maintenance of the structure or track. We think these inferences could be drawn whether or not the strap broke at the time of the accident. In view of the high degree of care which the jury might think it reasonable to expect and of the intimate knowledge which they might think the defendant would have or should have as to the condition of its structure and appliances, we are of opinion that they might take the final step of finding it more likely than not that negligence of the defendant had brought about the condition which caused the accident or had permitted it to continue when it should have been remedied. The case bears some resemblance to those cases holding that the unexplained derailment of a trolley car is in itself evidence for the jury, *Gilchrist* v. *Boston Elevated Railway*, 272 Mass. 346, and cases cited, and to cases holding that an unusual or extraordinary lurch or jerk is evidence of negligent operation. *Convery* v. *Eastern Massachusetts Street Railway*, 252 Mass. 418, and cases cited. *Gray* v. *Boston Elevated Railway*, 251 Mass. 167. Several courts of last resort have decided that the doctrine of *res ipsa loquitur* is applicable in cases very similar to the present one. *Bibeau* v. *Fred W. Pearce Corp.* 173 Minn. 331, and cases cited. *O'Callaghan* v. *Dellwood Park Co.* 242 Ill. 336. *Eldred* v. *United Amusement Co.* 137 Ore. 452. *Sand Springs Park* v. *Schrader*, 82 Okla. 244. *Lumsden* v. *L. A. Thompson Scenic Railway*, 130 App. Div. (N. Y.) 209, relied upon by the defendant, looks in the opposite direction.

There is nothing in the case to justify a ruling that the plaintiff was guilty of contributory negligence as matter of law. That he had been waving his hand and shouting does not prove negligence at the moment of the accident as a contributing cause, nor does the fact that he held the strap instead of the bar necessarily preclude him from recovery.

The attempted limitation of the defendant's liability printed on the ticket which the plaintiff bought did not

require that a verdict be directed for the defendant. We assume in favor of the defendant that, as it was not bound to invite the plaintiff at all, it could impose conditions and limitations upon the invitation which it did in fact extend to him, and that he would be bound thereby, if they were brought to his attention in such a manner that a person of ordinary intelligence in his position would have known of and understood them. Otherwise he is entitled to all the rights which the law gives to a business visitor. The ticket had the appearance of a mere check or token rather than of a contract. Although the plaintiff knew there was printing upon the ticket, he did not read it, but put it in his pocket until it should be taken up at the end of the ride. The attempted limitation was not brought home to him in any other way. It was for the jury to say whether this was enough. The case falls within the principle of *Brown* v. *Eastern Railroad*, 11 Cush. 97, *Hooker* v. *Boston & Maine Railroad*, 209 Mass. 598, 600, and *Kushner* v. *McGinnis*, ante, 326, rather than within *Grace* v. *Adams*, 100 Mass. 505, *O'Flaherty* v. *Cunard Steamship Co. Ltd.* 281 Mass. 447, and other cases cited by the defendant where the plaintiff accepted a contract and became bound by it.

There was no error in excluding the evidence offered by the plaintiff of previous accidents, some of them "similar in nature" to the accident in question. A judge can admit such evidence in his discretion if he is satisfied that conditions were so similar to those prevailing at the time in question that the evidence will have substantial value and that it will not lead to confusing and unnecessary collateral issues. *Shea* v. *Glendale Elastic Fabrics Co.* 162 Mass. 463. *Guidara & Terenzio Inc.* v. *R. Guastavino Co.* 286 Mass. 502, and cases cited.

Evidence offered by the plaintiff that one of the defendant's attorneys had been unable to find any officer or employee of the defendant who knew whether the strap was fastened or unfastened at the end of the ride was properly excluded.

*Exceptions sustained.*