HAZEL C. JEROMA & others *vs.* WILLIAM T. McNALLY.

Suffolk. May 3, 1949. — June 6, 1949.

Present: QUA, C.J., LUMMUS, DOLAN, SPALDING, & WILLIAMS, JJ.

*Negligence*, Merry-go-round.

A finding of negligence on the part of the proprietor of a merry-go-round toward a passenger thereon, who was injured when the merry-go-round suddenly increased in speed of operation and a wooden horse on which the passenger was riding came loose and "swung out" and he was thrown off the merry-go-round, was warranted by evidence that the proprietor before the accident knew that the merry-go-round was defective and that there was no one at the controls in its center to stop it at the time of the accident.

TORT. Writ in the Superior Court dated September 6, 1945.

The action was tried before *O'Connell*, J.

*L. H. Peters*, for the defendant.

*T. J. Murphy*, (*L. E. Ryan* with him,) for the plaintiffs.

LUMMUS, J. This is an action of tort. The declaration is in three counts, the first for personal injuries to Hazel C. Jeroma, the second for personal injuries to her daughter, Lorraine M. Jeroma, and the third for consequential damages to the husband of Hazel C. Jeroma resulting from the injuries to her. G. L. (Ter. Ed.) c. 231, § 4A, as inserted

by St. 1943, c. 350, § 1; § 6A, as inserted by St. 1939, c. 372, § 1. *Repucci* v. *Exchange Realty Co.* 321 Mass. 571. *Clouatre* v. *Lees,* 321 Mass. 679. There were verdicts for the several plaintiffs on all the counts, and the case comes here on the exceptions of the defendant.

There was evidence tending to prove the following facts. The defendant operated a merry-go-round at a carnival at Dedham. The diameter of the merry-go-round was variously estimated at thirty-six feet and at twelve feet. It was operated by a gasoline motor, the controls of which were in the center of the merry-go-round. It contained thirty seats in the form of horses, arranged in ten rows, three abreast. On May 29, 1945, Hazel C. Jeroma, accompanied by her daughter, Lorraine, bought a ticket, and put her daughter on a white horse on the outside edge of the merry-go-round. As her daughter could not put her feet in the stirrups, the mother stood beside her and held her. After several revolutions of the merry-go-round, it suddenly went faster, "terribly fast," and "the child was being pulled right up and out and jerking terribly." A child screamed, then the merry-go-round revolved three or four times before stopping, "the horse came free at the bottom so that it swung out," and both mother and daughter were thrown off the merry-go-round and hurt. The merry-go-round could be stopped in one and one half revolutions while running at full speed. There was not only evidence that the merry-go-round was revolving faster than usual, but also evidence that although the defendant kept three or four men working on the merry-go-round all the time, there was no one at the controls at the time of the accident, to shut off the power.

The defendant had been watching the merry-go-round for about ten minutes before the accident, and was present at the time of the accident. About eight minutes before the accident a white horse on the outside edge of the merry-go-round had become detached from its fastenings, the merry-go-round had been stopped, and one of the men picked up a red pipe and put it in the floor to remedy what

had happened to the white horse. Then the merry-go-round was started again.

After the accident, the defendant told one of his men to take the horse off the merry-go-round, and the man took off three horses. The defendant said to the man, "I told you to look at that horse before. Did you or didn't you?" The jury could find from that, that the defendant knew that something had been defective in the merry-go-round, that needed remedying.

The defendant excepted to the denial of his motion for a directed verdict in his favor.

The female plaintiffs were business invitees of the defendant, and were entitled to due care on his part in keeping the premises in a reasonably safe condition for their use. *Lemoine* v. *Springfield Hockey Association, Inc.* 307 Mass. 102, 104. *Noble* v. *Park Enterprises, Inc.* 313 Mass. 454, 457. *Bell* v. *Dorchester Theatre Co.* 314 Mass. 536. *Matthews* v. *L & L Enterprises, Inc.* 314 Mass. 538. *Rouillard* v. *Canadian Klondike Club, Inc.* 316 Mass. 11, 14. A jury would be justified in holding the proprietor of a merry-go-round to a high degree of care, because of the danger of serious injury to his patrons if it should be defective. *Brennan* v. *Ocean View Amusement Co.* 289 Mass. 587, 592. The fact that the merry-go-round went out of order while being used warranted the inference that it was defective and unsafe. *Callahan* v. *New England Telephone & Telegraph Co.* 216 Mass. 334, 336. *Matthews* v. *L & L Enterprises, Inc.* 314 Mass. 538, 539.

On the whole evidence, we think it could have been found that the defendant and his servants had notice that the merry-go-round was defective and dangerous, and failed to use due care in making it safe before permitting the female plaintiffs to ride on it. Moreover, it could have been found negligent not to have a man at the controls at the time of the accident, who could have stopped the merry-go-round sooner than it was stopped. There was no error, we think, in denying the motion of the defendant for a directed verdict in his favor.

The defendant excepted to the charge in that it left to the jury the question whether the pipe became loose, whereas the evidence was that the pipe broke. Later the judge charged that if the jury should find that there was no evidence that the pipe became loose, "then you must disregard what I said previously." There was evidence from the plaintiff Hazel C. Jeroma that "the horse came out" and that "the horse came free at the bottom so that it swung out." This exception cannot be sustained.

The defendant excepted to the charge on the ground that "there was no evidence in the case connecting any horse that became detached before the accident with the horse involved in the accident in which any plaintiff was injured." There was evidence that the horse involved in the accident and the horse that had become detached before were alike in that both were white, were on the circumference of the merry-go-round, and were fastened by red pipes. What was said by the defendant to his employee could be found to indicate that it was the same horse. We think the jury could have found that the same horse was involved in both incidents.

The defendant excepted to the charge on the ground that "there was no evidence that the defendant failed to secure the pipe, referred to as a telescope, guide post or sleeve, involved in the operation of the horse which was involved in the accident." There was evidence from the plaintiff Hazel C. Jeroma that "the horse came out" and that "the horse came free at the bottom so that it swung out." There was evidence that the horse had become detached before, and it could have been found that thereafter it was not properly secured.

The defendant excepted to the words of the judge in the charge when he spoke of the horse as "flying so to speak without any control, without being fastened to the bottom or to the platform." In this he adopted the language of the plaintiff Vincent W. Jeroma, who spoke of the horse as "flying around empty, jumping around on the outside." We think the judge was within his rights in stating the testimony as he did state it.

The defendant excepted to the failure of the judge to instruct the jury that even if the defendant were negligent, the plaintiffs could not recover unless such negligence was the proximate cause of their injuries. The only suggestion made in argument by the defendant is that, if the negligence were the failure to have a man at the controls, there was no evidence that if a man had been there he could have seen the plight of the female plaintiffs and stopped the merry-go-round. But the distance from the controls to the female plaintiffs could not have been more than eighteen feet, and a man at the controls apparently could have seen them plainly. The judge told the jury that it was for them to decide "whether it was through his [the defendant's] fault or the fault of his agents or servants that this accident occurred." We think that the question of causation was substantially covered, and that there was no error.

The defendant excepted to the description in the charge of the controls as the "post of duty" from which, there was testimony, an employee of the defendant was absent at the time of the accident. The passage excepted to is this: "If you accept the testimony of the plaintiffs' witnesses that the operator was not there, that is, at the control, but was engaged in taking tickets or was away from the post, or what might be said to be his post of duty at the control of the machinery for starting and stopping, then you would be warranted in saying that the defendant as principal would be responsible for the neglect of his agent and servant, the operator, when [whom?] he had engaged to direct the operation of this merry-go-round device. . . . If, however, he was not at what might be determined to be his post of duty and he was not there to meet the emergency, and if he had been there the emergency could have been better controlled or prevented, that is, the fall of the mother and child, then you will be warranted in saying that it was negligence on his part."

The judge did not instruct the jury that the controls constituted the post of duty and that absence from that

post was negligence. He left it to the jury to determine whether due care required the operator to be there. In this there was no error.

*Exceptions overruled.*