MARGUERITE G. REARDON *vs.* THE COUNTRY CLUB AT COONAMESSETT, INC.

Worcester.    February 7, 1968. — February 29, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Negligence,* Golf course, Contributory, Assumption of risk.    *Golf Course.*

A finding of negligence on the part of a golf club toward a patron who paid a fee to play on its course, with which she was not familiar, and, after completing her round of golf, was injured, while emerging into a clearing from a tree lined portion of a path to the club's parking lot, when she was hit on the head by a golf ball struck from a tee near the path, was warranted by evidence that prior to the accident the danger of golf balls flying onto the path from such tee was sufficiently probable and serious to require the club to erect and maintain a protective  screen, that the club was aware of the danger, and that no screen was in place when the patron was hit; and findings of contributory negligence and voluntary assumption of risk on the part of the patron were not required.

TORT.    Writ in the Superior Court dated July 27, 1962.

The action was tried before *Lappin, J.*

*William C. O'Neil, Jr.,* for the defendant.

*Walter J. Griffin* for the plaintiff.

KIRK, J.  In this action of tort for personal injuries, the jury returned a verdict for the plaintiff.  The sole question before us is whether there was error in the denial of the defendant's motion for a directed verdict.  The defendant argues as matter of law that it was not negligent, that the negligence of the plaintiff contributed to her injury, and that the plaintiff assumed the risk of injury.

We summarize the evidence in light most favorable to the plaintiff.  The plaintiff had been regularly playing golf for fifteen or more years, playing approximately once a week during the golf season.  She had previously played on the defendant's course only once — about two years before August, 1960.  She was familiar with golf courses in general but had no memory of the layout of the defendant's course.  On August 19, 1960, she and two companions went to the defendant's course to play a round of golf.  They paid their fees and were admitted to the course.  At the time of the accident, they had completed their round and were walking toward the parking lot maintained by the defendant.

A gravel path or unimproved road runs from the eighteenth hole parallel to the fairway of the tenth hole to the clubhouse and parking lot.  Part of the path is lined with trees and undergrowth on both sides.  At a point about eighty yards from the tenth tee, generally in the direction in which balls are hit while playing the tenth hole, the line of trees ends abruptly.  As the plaintiff emerged from the tree-lined part of the path, she was hit on the head by a golf ball struck from the tenth tee.  The plaintiff testified that she did not see any sign warning of the danger of balls coming from the tenth tee or any screen to protect against such balls.  The defendant's manager testified that a sign had been placed in the area "in 1959 or the spring of 1960" and that a screen had been erected "to the best of his recollection approximately in June or July of 1960."  In rebuttal, the plaintiff testified that the manager had admitted, when he testified in the District Court, that the screen was not there on August 19, 1960.

The screen appears in photographs which are in evidence

but which were taken at various times after the accident. The screen consists of chain-link fencing stretched between a rectangular frame of metal tubing. The bottom of the frame is supported approximately two feet above the ground. The top appears to be approximately six feet off the ground. The screen is solidly and permanently installed and seems well designed to prevent golf balls from flying dangerously onto the path.

In her game on the afternoon of the accident, the plaintiff had played the tenth hole. The tenth hole is a "dogleg." The ball is driven in one direction from the tee and then in another direction to reach the green. It would be permissible, however, according to the rules of the game and the rules applicable on the defendant's course, to cut the dogleg angle and direct the ball over the trees in the area where the plaintiff was struck. Some players could be expected to attempt this.

We examine first the sufficiency of evidence of negligence. "One maintaining a place of amusement who has invited the public to attend upon the payment of an admission fee is bound to exercise reasonable care to keep the premises in a reasonably safe condition for their use, and to warn them against any dangers which he knows or ought to know they might encounter while upon the premises and which they reasonably could not be expected to know." *Lemoine* v. *Springfield Hockey Assn. Inc.* 307 Mass. 102, 104. *Jeroma* v. *McNally,* 324 Mass. 385, 387. *Farinelli* v. *Laventure,* 342 Mass. 157, 159–160. Applying this rule to the case before us, we think that there was sufficient evidence to reach the jury on the issue of negligence. It could have been found that prior to the accident the danger of golf balls flying onto the path from the tenth tee was sufficiently probable and serious to require the defendant, in the exercise of reasonable care, to erect and maintain a screen to protect those using the path. On this point alone, the manager's testimony could be taken as an admission that the defendant was aware of the danger in 1959. It was for the jury to say whether the screen had been erected and was in position at

the time of the accident. A finding that the plaintiff was hit by a golf ball at the place and in the manner testified to by the plaintiff would afford a basis for a reasonable inference that the screen was not there. The jury could accept as an admission by the manager, the plaintiff's testimony that the manager had testified in the District Court that the screen was not in place on the day of the accident. The jury could reject the manager's "best . . . recollection" of when the screen was erected and find, on all the evidence, that the screen was not erected until after the plaintiff's accident, and that the defendant's failure to erect it before the accident constituted negligence.

The plaintiff's contributory negligence was likewise a jury question. The plaintiff testified that she was struck as soon as she emerged into the clearing. The fact that the plaintiff had played the tenth hole need not have alerted her to the likelihood of danger when she left the eighteenth. She was unfamiliar with the defendant's course. The evidence does not require a finding that when she was on the tenth tee she ought to have noticed the road, or realized that it was in use by players, or where it ran to or from. Even had she known these facts, the evidence was that she had no opportunity before she was struck to observe that she was entering the dangerous clearing in the road. The due care of the plaintiff was properly left to the jury.

The third issue is voluntary assumption of the risk. A participant in a game or sport who is familiar with the game or sport assumes the risk of the hazards normally involved. *Shaw* v. *Boston Am. League Baseball Co.* 325 Mass. 419, 422. *Pouliot* v. *Black,* 341 Mass. 531, 532–533. See *Farinelli* v. *Laventure,* 342 Mass. 157, 160. But unreasonable risks are not assumed by the mere fact of participation. One may rely to some extent on the obligation of the owner to keep his premises in a reasonably safe condition for those using it. *Lemoine* v. *Springfield Hockey Assn. Inc.* 307 Mass. 102, 105. *Farinelli* v. *Laventure,* 342 Mass. 157, 160. The jury were not required to find that the danger to the plaintiff at the

place of injury was so obvious or so inherent in the game of golf that the plaintiff necessarily assumed it. There was no error in denying the defendant's motion for a directed verdict on this ground.

All issues were properly submitted to the jury.

*Exceptions overruled.*