# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JODI BRUGH, an individual, | No. 51055-3-II |
| Appellant, | |
| v. | |
| FUN-TASTIC RIDES CO., an Oregon corporation; MIDWAY RIDES LLC, a Washington limited liability company; JOHN DOE MANUFACTURER, an unknown entity, | PUBLISHED OPINION |
| Respondents. | |

MELNICK, J. — While riding a roller coaster at the Washington State Fair, Jodi Brugh received a severe injury that resulted in a subdural hematoma that required brain surgery. Brugh sued Fun-Tastic Rides Co., Midway Rides LLC, and John Doe Manufacturer (collectively Fun-Tastic), alleging negligence. She relied on the doctrine of res ipsa loquitur to establish a breach of duty. Fun-Tastic moved for summary judgment on the theory that res ipsa loquitur did not apply, and after reconsideration, the trial court granted the motion.

We reverse.

## FACTS

Fun-Tastic operated a roller coaster at the Washington State Fair. Before the start of the Fair, the Department of Labor and Industries (L&I) inspected the roller coaster for safety. L&I issued a permit for the roller coaster. Fun-Tastic inspected the ride on September 16, 2013, found no abnormalities, and noted that the "Ride is Running well." Clerk's Papers (CP) at 46.

On September 16, Brugh rode Fun-Tastic's roller coaster. Brugh described the last turn of the roller coaster as a sudden and violent jolt. As a result of the jolt, she struck both sides of her head on the roller coaster's safety harness. Subsequently, she lost hearing in her right ear. Fearing that she had a blown eardrum, she went to the Fair's medical tent for assistance. The Fair's medical staff recommended that she either go to urgent care or see her doctor the next day.

The next day, Brugh saw her primary care physician, Dr. Rachael Gonzalez. Brugh was bleeding from her ears. Because Brugh had a history of ear infections, Dr. Gonzalez attributed the bleeding to an ear infection.

On October 7, Brugh again saw Dr. Gonzalez. Brugh reported "severe and debilitating" head and neck pain. CP at 89. Dr. Gonzalez diagnosed Brugh with, among other injuries, "[s]evere traumatic brain injury" and a "[s]ubdural hematoma post head injury." CP at 90. Dr. Gonzalez believed the injuries were, more probably than not, "directly related to the head trauma Ms. Brugh suffered from the rollercoaster ride." CP at 90.

Dr. Gonzalez referred Brugh to a neurologist for an emergency consultation. Brugh had brain surgery for the subdural hematoma on October 16.

Brugh then filed a complaint alleging Fun-Tastic's negligence. After some discovery, Fun-Tastic moved for summary judgment. The court denied the motion.

Fun-Tastic filed a motion for reconsideration. The court heard oral argument, granted Fun-Tastic's motion, and dismissed Brugh's claims. Brugh appeals.

ANALYSIS

I.    LEGAL PRINCIPLES

    A.    Summary Judgement

We review an order for summary judgment de novo, performing the same inquiry as the trial court. *Aba Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). "We consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party." *Rublee v. Carrier Corp.*, 192 Wn.2d 190, 199, 428 P.3d 1207 (2018). "Summary judgment is proper when the record demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Munich v. Skagit Emergency Commc'ns Ctr.*, 175 Wn.2d 871, 877, 288 P.3d 328 (2012).

    B.    Res Ipsa Loquitur

In an action for negligence, a plaintiff must prove four basic elements: "(1) the existence of a duty, (2) breach of that duty, (3) resulting injury, and (4) proximate cause." *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996). The parties dispute only breach of duty.

Res ipsa loquitur "provides an inference as to the defendant's breach of duty." *Curtis v. Lein*, 169 Wn.2d 884, 892, 239 P.3d 1078 (2010). Whether res ipsa loquitur applies is a question of law. *Pacheco v. Ames*, 149 Wn.2d 431, 436, 69 P.3d 324 (2003).

A plaintiff may rely on res ipsa loquitur's inference of breach of duty if three elements are met: "(1) the accident or occurrence that caused the plaintiff's injury would not ordinarily happen in the absence of negligence, (2) the instrumentality or agency that caused the plaintiff's injury was in the exclusive control of the defendant, and (3) the plaintiff did not contribute to the accident or occurrence." *Curtis*, 169 Wn.2d at 891. The parties dispute only the first element.

The first element is satisfied in any of three conditions:

"(1) When the act causing the injury is so palpably negligent that it may be inferred as a matter of law . . . ; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; [or] (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries."

*Curtis*, 169 Wn.2d at 891 (internal quotation marks omitted) (quoting *Pacheco*, 149 Wn.2d at 438-39). The parties here dispute the applicability of the second condition.

"[T]he res ipsa loquitur doctrine allows the plaintiff to establish a prima facie case of negligence when he cannot prove a specific act of negligence . . . . Once the plaintiff establishes a prima facie case, the defendant must then offer an explanation, if he can." *Pacheco*, 149 Wn.2d at 441. Res ipsa loquitur is inapplicable only where the defendant's evidence completely explains the plaintiff's injury. *Pacheco*, 149 Wn.2d at 440. "Thus, the plaintiff may be entitled to rely on the . . . doctrine even if the defendant's testimony, if believed by the jury, would explain how the event causing injury to the plaintiff occurred." *Pacheco*, 149 Wn.2d at 440. Fun-Tastic does not argue that it presented evidence explaining Brugh's injury. Instead, it contends that Brugh has not established her prima facie case.

To summarize, the parties do not dispute that Fun-Tastic owed Brugh a duty as a business invitee, that Brugh's injuries were caused by Fun-Tastic, or that Brugh suffered damages. They dispute only whether Fun-Tastic breached its duty of care. They dispute the applicability of res ipsa loquitur to establish this element.

Regarding the applicability of res ipsa loquitur, the parties do not dispute that Fun-Tastic maintained exclusive control of the roller coaster that caused Brugh's injury. They also agree that Brugh did not contribute to her own injury. The parties dispute only the applicability of res ipsa loquitur's first element. In determining whether this element is established, the parties dispute

4

whether "'the general experience and observation of mankind teaches that the result would not be expected without negligence.'" *Curtis*, 169 Wn.2d at 891 (internal quotation marks omitted) (quoting *Pacheco*, 149 Wn.2d at 438-39). Thus, determining whether this condition is satisfied is dispositive to the current appeal.

II.     BRUGH'S ROLLER-COASTER RIDE

Brugh argues she experienced an abnormally strong jolt on her roller-coaster ride that caused her to hit her head on the roller coaster's safety harness. This injury resulted in a subdural hematoma that required brain surgery. Brugh argues that general experience teaches that such an impact leading to her brain injury does not ordinarily occur on roller coasters, absent negligence.

Fun-Tastic argues that Brugh must show something more than just the extent of her injuries to show that the roller coaster operated abnormally. Fun-Tastic claims that the roller coaster operated as expected and that any jolts were the normal jolts of the roller coaster.

A.      Using Resulting Injuries as the "Result"

The parties dispute whether res ipsa loquitur's first element may be satisfied by showing that the resulting injury would not be expected without negligence. We conclude it can.

In *ZeBarth v. Swedish Hospital Medical Center*, 81 Wn.2d 12, 20, 499 P.2d 1 (1972), the court looked to the nature of the plaintiff's injuries in applying res ipsa loquitur. In the case, approximately one year after the plaintiff received treatment for Hodgkin's disease, he became paralyzed. *ZeBarth*, 81 Wn.2d at 13. He sued the hospital where he received treatment. *ZeBarth*, 81 Wn.2d at 13. The plaintiff relied on res ipsa loquitur to prove that his medical injuries would not have occurred if the hospital's version of the events was accurate. *ZeBarth*, 81 Wn.2d at 20. That is, he argued that an intervention of someone's negligence must have occurred to leave him paralyzed. *ZeBarth*, 81 Wn.2d at 18, 20. At trial, the plaintiff called experts who speculated about

5

potential hospital actions that could have caused his paralysis. *ZeBarth*, 81 Wn.2d at 15-17. The jury found for the plaintiff, and the hospital appealed. *ZeBarth*, 81 Wn.2d at 13-14, 18.

The hospital argued that, in the absence of direct proof of the injury-causing event, res ipsa loquitur was improper. *ZeBarth*, 81 Wn.2d at 18. The court rejected the hospital's argument and concluded that the record permitted the plaintiff to rely on res ipsa loquitur. *ZeBarth*, 81 Wn.2d at 22. Specifically, in discussing whether the general experience and observation of mankind teaches that the result would not be expected without negligence, the court noted that "high voltage radiation in the treatment of cancer has been widely enough and long enough employed in this country to allow the jury to find that . . . paralysis ordinarily will not result from its use except for the intervention of someone's negligence." *ZeBarth*, 81 Wn.2d at 20.

Although *ZeBarth* occurred in the medical malpractice context, the court's reasoning is applicable here. *ZeBarth* recognized that to establish whether the general experience and observation of mankind teaches that the *result* would not be expected without negligence, the result need not be the specific injury-causing event (e.g., a barrel falling out of a window). 81 Wn.2d at 20. Rather, the result can be the plaintiff's resulting injuries (e.g., paralysis). *ZeBarth*, 81 Wn.2d at 20. Thus, the court permitted the plaintiff in *ZeBarth* to do what Brugh attempts here.

In *Robison v. Cascade Hardwoods, Inc.*, 117 Wn. App. 552, 566-67, 72 P.3d 244 (2003), we similarly looked to the nature of the plaintiff's injuries in applying res ipsa loquitur. There, a logging-truck driver suffered a severe electrical shock while operating the defendant's trailer loader. *Robison*, 117 Wn. App. at 555, 566. The trial court granted summary judgment to the defendant on the ground that res ipsa loquitur did not apply. *Robison*, 117 Wn. App. at 561-62. We reversed, stating, "[G]eneral experience and observation [teaches] that, absent evidence of an

6

act of God, individuals ordinarily do not suffer severe electrical shocks unless someone has been negligent." *Robison*, 117 Wn. App. at 567 (footnote omitted).

Our decision turned on the nature of the shock. *See Robison*, 117 Wn. App. at 567. For example, general experience teaches that minor shocks, like those resulting from static electricity, do occur in the absence of negligence. But severe shocks are different. In the absence of negligence, they do not ordinarily occur while operating a trailer loader. *Robison*, 117 Wn. App. at 567. Thus, we looked to the nature of the plaintiff's injuries and determined whether general experience teaches that those injuries ordinarily happen in the absence of negligence. *Robison*, 117 Wn. App. at 567.

Language from the Supreme Court further supports our conclusion. In *Zukowsky v. Brown*, 79 Wn.2d 586, 594-95, 488 P.2d 269 (1971), the court recognized that application of res ipsa loquitur depends on whether "the manner and circumstances of the damage or injury be of a kind that do not ordinarily happen in the absence of someone's negligence." In *Pacheco*, the court again recognized that the doctrine takes effect when "a plaintiff asserts that he or she suffered injury, the cause of which cannot be fully explained, and the injury is of a type that would not ordinarily result if the defendant were not negligent." 149 Wn.2d at 436. Thus, *Zukowsky* and *Pacheco* further suggest that we may determine whether res ipsa loquitur's first element is established by analyzing whether the general experience and observation of mankind teaches that the nature of plaintiff's injury would not be expected without negligence.

Accordingly, we conclude that it is appropriate to examine the nature of an injury when analyzing the first element of res ipsa loquitur. The issue here then is whether the general experience and observation of mankind teaches that a subdural hematoma would not be expected from riding a roller coaster without negligence.

B.     General Experience and Observations

Brugh argues that "general experience counsels that properly inspected, maintained, and operated roller coasters[] do not slam heads into shoulder rests with the requisite force to cause a subdural hematoma," absent negligence.  Br. of Appellant at 17.  We agree.

For purposes of its motion for summary judgment, Fun-Tastic makes numerous concessions.  It does not dispute causation or allege that Brugh contributed to her own injury.  Thus, Fun-Tastic recognizes that Brugh, while strapped into the roller coaster, hit her head during the course of the ride.  It recognizes that Brugh's subsequent subdural hematoma directly resulted from hitting her head during the roller-coaster ride.  It also recognizes that Brugh did not contribute in any way to her injury.  Yet, Fun-Tastic argues that the roller coaster operated as expected.  The general experience and observation of mankind teaches that these cannot all simultaneously be true.  *See Bibeau v. Fred W. Pearce Corp.*, 173 Minn. 331, 334, 217 N.W. 374 (1928) ("One would hardly suppose it possible for defendant to continue the roller-coaster business if such accidents were ordinary occurrences.").

We recognize that certain injuries are to be expected while riding roller coasters.  For example, general experience teaches that people may receive minor bumps to their head from the safety harness of a roller coaster during a ride.  General experience teaches that people may receive minor whiplash while riding a roller coaster.  However, general experience teaches that a subdural hematoma brain bleed does not ordinarily happen while strapped into a roller coaster in the absence of negligence.  Accordingly, the nature of Brugh's injury is not of a type that one would expect while riding a roller coaster.

We do not determine which types of injuries are severe enough to invoke the doctrine of res ipsa loquitur in all cases.  Instead, whether a plaintiff may rely on res ipsa loquitur "depends

upon the peculiar facts and circumstances of the individual case." *Morner v. Union Pac. R.R. Co.*, 31 Wn.2d 282, 293, 196 P.2d 744 (1948). Here, we simply recognize that this specific injury, Brugh's subdural hematoma, would not ordinarily occur while strapped into a roller coaster without negligence. Res ipsa loquitur, therefore, provides an inference of a breach of duty.[1]

Other jurisdictions considering similar facts have arrived at the same conclusion. In *Bibeau*, the plaintiff rode the defendant's roller coaster and hit her nose on the safety bar; the hit broke her nose and rendered her unconscious. 173 Minn. at 333. The Supreme Court of Minnesota concluded that res ipsa loquitur applied. "[I]f such accidents were ordinary occurrences," the court reasoned that roller-coaster companies would find willing patrons hard to come by. *Bibeau*, 173 Minn. at 334. Thus, the plaintiff's abnormal injuries must have been the result of an abnormal roller-coaster ride, which do not ordinarily occur in the absence of negligence. *See Bibeau*, 173 Minn. at 334.

In *Jenkins v. Ferguson*, 357 So. 2d 39, 40 (La. Ct. App. 1978), the plaintiff broke her leg after being thrown from an amusement park ride called the "Scrambler." The evidence showed that the plaintiff's fiancé, who accompanied her on the Scrambler, "first locked the device and subsequently the operator came back unlocked it and locked it properly, rattling it to be sure that it was properly locked." *Jenkins*, 357 So. 2d at 40-41. Nonetheless, the door opened, and the plaintiff was thrown from the ride. *Jenkins*, 357 So. 2d at 40.

The Court of Appeal of Louisiana concluded that because the elements of exclusive control and contributory negligence were not in dispute, "this is a proper case for the application of the

---

[1] The "jury is [still] free to disregard or accept the truth of the inference." *Curtis*, 169 Wn.2d at 895.

doctrine of res ipsa loquitur. No one knows what happened . . . . We do know that the locking device did not work properly. . . [but n]o one knows . . . why." *Jenkins*, 357 So. 2d at 41.

In *Coaster Amusement Co. v. Smith*, 141 Fla. 845, 846-47, 194 So. 336 (1940), out of the 1,236 patrons who rode the roller coaster on the night in issue, only the plaintiff suffered an injury. While the plaintiff rode the roller coaster, "the car in which she was riding was by some means caused to perform a sudden and unusual jerk," and as a result, the plaintiff was thrown from the roller-coaster car and injured. *Coaster Amusement*, 141 Fla. at 846.

The defendant presented the following evidence. Before the plaintiff's injury, the roller coaster was inspected every day, and no defects were found. *Coaster Amusement*, 141 Fla. at 847. Immediately after the plaintiff's injury, the defendant inspected both the car in which the plaintiff rode and the roller coaster's track. *Coaster Amusement*, 141 Fla. at 847. The defendant found nothing wrong with either. *Coaster Amusement*, 141 Fla. at 847. Further, the day after the injury, the roller coaster operated with no mishaps. *Coaster Amusement*, 141 Fla. at 847. The defendant had not repaired or replaced any parts in the intervening time. *Coaster Amusement*, 141 Fla. at 847. However, the defendant offered "no explanation of the cause of the unusual gyrations of [the roller coaster]." *Coaster Amusement*, 141 Fla. at 847.

The trial court instructed the jury on res ipsa loquitur, and the jury found in favor of the plaintiff. *Coaster Amusement*, 141 Fla. at 846-47, 856. The Supreme Court of Florida approved the res ipsa loquitur instruction based upon the facts of the case. *Coaster Amusement*, 141 Fla. at 856.

CONCLUSION

Because we conclude that Brugh's injury, a subdural hematoma, is not of a type one would expect while riding a roller coaster without negligence, we conclude that the doctrine of res ipsa loquitur applies to her case.[2]  Therefore, the trial court erred in granting Fun-Tastic's motion for summary judgment.

We reverse.

_____
Melnick, J.

We concur:

_____
Worswick, J.

_____
Maxa, C.J.

---

[2] We also reject Fun-Tastic's argument that the injury-causing instrumentality must be destroyed before a plaintiff may rely on the doctrine.  Fun-Tastic argues if the instrumentality is not destroyed, a plaintiff can inspect it, and res ipsa loquitur is inapplicable.  Fun-Tastic's argument relies on the concurrence from *Curtis*.  169 Wn.2d at 896 (Madsen, C.J., concurring).  However, no binding authority holds that res ipsa loquitur may only be applied when the injury-causing instrumentality has been destroyed or is otherwise unavailable to the plaintiff.  In fact, in numerous cases the injury-causing instrumentality was not destroyed, yet the plaintiff was able to rely on res ipsa loquitur's inference of breach of duty.  *See, e.g.*, *Zukowsky*, 79 Wn.2d at 589; *Robison*, 117 Wn. App. at 560, 566-67.