Patrick J. MURPHY, et al., Respondents,

v.

CITY OF MINNEAPOLIS, et
al., Appellants.

No. 49907.

Supreme Court of Minnesota.

May 9, 1980.

Rehearing Denied June 11, 1980.

Robert J. Alfton, City Atty., Les R. Karjala and C. Lynne Fundingsland, Asst. City Attys., Minneapolis, for appellants.

Meshbesher, Singer & Spence and Fred H. Pritzker, Minneapolis, for respondents.

YETKA, Justice.

Patrick Murphy was shot by Officer Clinton Tucker of the Minneapolis Police Department during a burglary. Patrick and his father, James Murphy, then brought this civil action against Officer Tucker and the City of Mineapolis. Following a jury trial before the Hennepin County District Court, the jury found the defendants more negligent than the plaintiff Patrick Murphy. Thereafter, the defendants moved for judgment in their favor or for a new trial, which motions were denied by the district court. The defendants have appealed the order denying their motions. We reverse and remand for a new trial.

The issues raised on appeal are:

1. Did the trial court err in admitting into evidence or instructing the jury with regard to the Minneapolis Police Department order governing the use of firearms by officers?

2. Did the trial court err in instructing the jury on the privilege of a police officer to use deadly force under Minn.Stat.

§§ 609.06 and 609.065 (1974) as a defense to a charge of battery but not to negligence?

3. Did the trial court err in not instructing the jury on the "sudden emergency" doctrine?

4. Did the trial court err by suppressing the testimony of Robert and Donna Merchant?

On June 17, 1974, at 12:30 a.m., Patrick Murphy, 17, and two other juveniles entered the Ince residence at 4553 Washburn Avenue South in Minneapolis for the purpose of burglarizing it. The occupants of the house were away on vacation. Patrick testified that he immediately went upstairs to a room in the rear of the house where he was looking for things to take. He did not know what the other two boys were doing.

When he heard someone yell that the police had arrived, he ran downstairs to the front door. There he saw one of the other boys run outside. He did not follow because he saw a police car out front. He then ran to the rear door. The third boy was just closing that door and stated that the police were also out back. Patrick then ran to a side window. He testified that he opened the inside window, kicked out the storm window, and jumped outside. He was shot three times, ran a few yards and fell. He had been shot once in each arm and once in the chest by Officer Tucker.

Officer Tucker testified that on arrival at the house, he had looked into the rear doorway. It was dark outside, but lights were on in the house. There he saw a person he identified as Patrick holding a rifle. When he announced "police" and ordered the person to drop the gun, the person raised the rifle to his cheek and aimed it at him. It had a telescopic sight. Tucker fled from the door and took up a position from where he could see both the side and rear of the house.

He testified that he then saw two persons run past the side window, one of whom was carrying a rifle. He said the same person he had seen at the rear door approached the window and aimed the gun out at him. He ordered him to drop it and come out. He

said the person then lowered the rifle and jumped through the window with the rifle. Fearing for his life, Tucker shot three times at the person's extremeties.

In fact, Patrick did not have a gun when he went through the window. An unloaded rifle was found on a table in the dining room some 3 to 5 feet from the window. Fingerprints could not be identified on it. Patrick testified that he had never seen a gun in the house nor had he seen either of the others with a gun.

One of the other boys, Steven Tscholl, testified that he and the third boy had found rifles in an upstairs bedroom. Apparently they each took one. When Steven tried to leave by the rear door, he was confronted by a police officer and ordered to drop his gun. He shut the door, left the gun there on the floor, and escaped through the front door. The third boy escaped at some point and did not testify.

The trial court admitted into evidence the Minneapolis Police Department standing order governing the use of firearms which was in effect at the time of the shooting. Counsel for the appellants stated he had no objection to the evidence. The order provides that firearms can only be used to protect an officer or another from death or great bodily harm or to arrest a person who is committing or has committed a felony which involves death or great bodily harm. Officer Tucker was aware of the order but erroneously believed it permitted him to shoot a person engaged in any felony, whether or not death or bodily harm was involved.

The case was submitted to the jury with special verdict interrogatories on two theories, battery and negligence. The trial court ruled and instructed the jury that Officer Tucker had committed a battery as a matter of law in shooting Patrick. The only question submitted to the jury was whether Tucker was privileged to do so under Minn.Stat. §§ 609.06 and 609.065 (1974). Those statutes provided at the time of the incident that an officer would not be subject to criminal liability for using such force as reasonably necessary to arrest a person and could use deadly force to protect an officer or another from death or bodily harm or to arrest any person committing a felony.[1] The court ruled and instructed the jury that Patrick was committing a felony at the time. Accordingly, the jury found that Tucker was privileged to commit a battery.

The second theory was negligence. The court instructed the jury that it should test Tucker's actions "against what the ordinary, prudent police officer would have done under the same circumstances * *." The court read portions of the police department order governing firearms and instructed the jury that it could consider the order as "evidence of reasonable care." It further stated:

> Now that is the claims [sic] being made by the plaintiff here; that the defendant was negligent by virtue of the fact that they [sic] violated the Minneapolis Police Gun Policy. That is for you to decide whether there was a violation.

> And then, of course, you are also to decide whether Officer Tucker acted as a reasonably prudent police officer on that particular occasion.

The court also instructed the jury to compare Officer Tucker's negligence with that of Patrick under a comparative negligence instruction.

The jury found Patrick 40% negligent and Officer Tucker 60%. It found that the negligence of both parties caused the injuries and assessed damages at $75,000. Judgment was never formally entered for the plaintiffs. The defendants moved for judgment in their favor on account of the jury's finding of privilege or, in the alternative, for a new trial. The trial court denied both motions. In a memorandum which the order incorporated by reference, the trial court stated: "The jury assessed total damages of $75,000, which damages were then reduced to $45,000 by virtue of the plaintiff's own negligence * * *."

---

1. The statutes have since been amended by 1978 Minn.Laws ch. 736.

1. When the Minneapolis Police Department order governing the use of firearms was offered into evidence, counsel for the appellants stated that he had no objection. Thus, the appellants cannot now claim that it should not have been admitted. Minn.R. Evid. 103(a)(1).

The appellants claim that the trial court's jury instructions made the police department order conclusive on the issue of negligence. They state that if the order was admissible, it was only admissible as evidence of negligence. *See Boland v. Garber*, 257 N.W.2d 384, 386 (Minn.1977), which states that such rules are admissible as evidence of reasonable care but are not conclusive on the question of negligence.

A review of the court's jury instructions shows that the trial court did exactly what the appellants say it should have done. It instructed the jury that the test was whether Officer Tucker acted as a reasonable police officer would have under the circumstances. The court stated that the department order governing firearms could be taken as evidence of what constituted reasonable care, but that the question of what constituted reasonable care was for the jury to decide. It would appear that the trial court instructed the jury properly on this issue.

2. The trial court instructed the jury that the privilege of a police officer to use deadly force under Minn.Stat. §§ 609.06 and 609.065 (1974) is a defense to a charge of battery. However, it did not mention it with regard to the negligence count. On the question of negligence, it limited the jury's consideration to the police department order.

In support of the proposition that privilege is a defense to a battery claim but not to negligence, the respondents cite *Schumann v. McGinn*, 307 Minn. 446, 240 N.W.2d 525 (1976). In that case, the trial court had instructed the jury on negligence and not on battery. The defendant there claimed it was harmless error because the court had given a privilege instruction anyway. This court stated:

Neither do we find support for defendant's contention that the improper instruction constituted harmless error. It is true that the trial court instructed the jury as to the law officer's privilege to use force, and in some circumstances a firearm, in carrying out his duty. The trial court told the jury, however, that the privilege, if applicable, would negative Officer McGinn's negligence.

\* \* \* \* \* \*

\* \* \* In the case at bar \* \* \* the trial court did not submit both proper and improper issues to the jury, but submitted only improper issues.

307 Minn. at 452–54, 240 N.W.2d at 530. It appears that the court in that case was not addressing the exact question presented here.

However, we believe the trial court was correct in ruling that privilege is not a defense to a charge of negligence. The defense of privilege only applies to an intentional tort such as battery and not to a general negligence charge. The distinction is noted in W. Prosser, *Handbook of the Law of Torts* § 31 at 148 (4th ed. 1971) as follows:

The same balance between the threatened harm and the utility of the actor's conduct [as in negligence cases] appears, of course, in the various privileges, such as that of self-defense, which are recognized as defenses to *intentional torts*. The difference lies in the fact that, for historical reasons derived from the old action of trespass, such intentional invasions of the interests of another are regarded as prima facie wrongful, and the privilege is a matter of excuse or defense; while in negligence, which is to be traced primarily to the action on the case, it is considered that no wrong at all has occurred unless the defendant's conduct has been unreasonable in the light of the risk, and the burden is upon the plaintiff from the outset to establish the fact.

(Emphasis added.) Thus, a police officer may have a statutory privilege to commit a battery, but is not privileged to act negligently under the circumstances of any par-

ticular case. Therefore, the trial court did not err in not instructing the jury on privilege with regard to the negligence count.

In the absence of the Minneapolis Police Department order governing firearms, the statutes in question might themselves be submitted to the jury as evidence of what constituted reasonable care. However, to have submitted the statutes along with the more restrictive departmental order would only have misled the jury. Thus, the trial court acted properly in submitting only the order on the issue of negligence.

■ It should be noted that the statutes in question are part of the criminal code and create an exception to criminal liability. The police department could do nothing to override that aspect. On the other hand, nothing in the statutes precludes a department from setting a higher standard for its officers which could subject the officers to departmental sanctions for its violation and be admitted into evidence in civil suits. In fact, the court noted in *Schumann v. McGinn*, 307 Minn. 446, 463–65 nn. 12–16, 240 N.W.2d 525, 535–36 (1976), that several police forces and other law enforcement agencies had already done so at that time.

3. On the facts of this case—whether the officer's or plaintiffs' version—it is difficult for us to conceive how the jury could have found the police officer more negligent than the burglar. The officer was confronted with a clear and difficult emergency without time to consult a police manual. Also, the plaintiff may have jumped out of the window after hearing the police warn him to stop or they would shoot.

■ For these reasons, the appellants argue that the trial court should have instructed the jury on the sudden emergency doctrine and on the doctrine of primary assumption of risk. We agree; however, as respondents note, the appellants presented these issues in their proposed jury instructions but did not object to the failure of the trial court to give those instructions and thereby the appellants can be deemed to have waived these issues on appeal.[2] Minn. R.Civ.P. 51.

■ 4. In a pretrial motion, the respondents moved to suppress the testimony of Robert and Donna Merchant because the appellants failed to disclose a particular note. The note was from an assistant county attorney to an assistant city attorney. The note stated that the Merchants testified at the juvenile hearing on the burglary that they had heard Officer Tucker give verbal warnings before shooting and that they made good witnesses. The respondents claimed the notes should have been disclosed as statements of witnesses under Minn.R.Civ.P. 26.02(3).

The transcript shows that the trial court was highly critical of not only the failure of counsel to disclose the statement, but also of the conduct of the county attorney in providing information from the confidential hearing to the city attorney's office.

We disagree with the trial court's characterization of this statement. The rules of discovery were not violated. Minn.R.Civ.P. 26.02(3) provides:

> For purposes of this paragraph, a statement previously made is (A) a written statement signed or otherwise adopted or approved by the person making it, or (B) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

The document here was neither a signed statement of the witnesses nor a transcript or verbatim recital of their testimony. In addition, we see no reason why one subdivision of government may not notify another of its opinion that certain witnesses would be helpful to the city's case. It would be strange indeed if the county did not feel inclined to help the city.

Thus, it was reversible error on the part of the trial court to refuse the city's request that Mr. and Mrs. Merchant be permitted to

---

**2.** In a new trial, should appellants again request instructions on the sudden emergency doctrine and on primary assumption of risk, said instructions should be given to the jury.

testify. These two witnesses were critical to the city's case. It was they who called the police to the scene of this burglary, who observed the attempted arrests and who heard the voices of the parties involved.

The case is therefore reversed and remanded for a new trial on the issue of liability, at which time the testimony of Robert and Donna Merchant must be allowed. Since the city, at oral argument, conceded that the verdict of $75,000 was not excessive, the question of damages need not be relitigated. Of course, the $75,000 figure is again subject to being reduced according to the amount of negligence attributed to the plaintiff in the retrial.

Reversed and remanded for a new trial.