**Juli-Ann THOMPSON, as Trustee for the Heirs of Dennis Ray Thompson, Deceased, Respondent,**

v.

**Douglas G. HILL, Appellant.**

**No. C5-84-1430.**

Court of Appeals of Minnesota.

April 23, 1985.

William M. Hull, Winona, for appellant.

Phillip P. Hansen, Winona, for respondent.

Heard, considered and decided by POPOVICH, C.J., and NIERENGARTEN and CRIPPEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Respondent Juli-Ann Thompson commenced suit against appellant Douglas Hill under Minn.Stat. § 573.02 for the wrongful death of her husband, Dennis Ray Thompson. The case was bifurcated with the issues of liability and damages tried separately. The jury first returned a verdict finding Hill 60% negligent and Thompson (decedent) 40% negligent. The jury subsequently returned a verdict assessing Juli-Ann's damages at $318,000. As a surviving spouse, Juli-Ann received no-fault benefits totalling $27,500. The trial court deducted this sum from Thompson's recovery after reducing the jury award by the 40% negligence attributed to decedent.

The trial court denied Hill's motion for judgment NOV or, in the alternative, for a new trial. Judgment was entered on August 6, 1984. We affirm.

## FACTS

Dennis Thompson drowned when the vehicle in which he and Douglas Hill were riding broke through the ice of the Mississippi River near Winona, Minnesota. Hill, a close friend and employee of the Thompsons, was driving an automobile owned by Thompson at the time of the accident.

Thompson and Hill had been friends for nearly three years prior to the accident. They had spent a lot of time together, including fishing on the Mississippi River.

During the morning of February 2, Hill and Thompson ran several errands when Thompson asked Hill to drive. The two then ran a few more errands before they headed back to the Thompson home.

As they passed Lake Winona, Hill spotted several fish houses and suggested that they take a closer look. There were several other vehicles on the lake so they proceeded to drive onto the ice. They spent no more than 15 minutes driving around before exiting the lake at the point at which they had entered.

Sometime later, Thompson commented that he wanted to go look at a boathouse located on the Mississippi. He told Hill to head towards the river and Hill selected the route. They proceeded onto the ice, which appeared the same as Lake Winona. Neither Hill nor Thompson made an effort to determine the thickness of the ice nor did they make a complete stop before proceeding.

They then headed diagonally upstream when they noticed steam rising from the river. Thompson commented that steam meant open water and told Hill to turn around. Hill turned around and headed downstream. After travelling a short distance, Hill noticed that there were no other tracks on the river and that he "didn't like that" and "felt uncomfortable" so he suggested that they "should turn around." Before he could head towards shore, there was "a loud cracking or crumbling sound" and the front of the auto began to sink.

Hill escaped through the back tailgate of the jeepster and heard Thompson splashing behind him. Hill attempted to grab Thompson but he lost his hold and Thompson went under the ice.

## ISSUES

1. Was there a primary assumption of the risk which would preclude a finding of negligence on the part of Hill?

2. Were Thompson and Hill engaged in a joint enterprise, thereby imputing Hill's negligence to Thompson?

3. Did the trial court err when it denied Hill's request for an instruction on the doctrine of secondary assumption of risk?

4. Did the trial court err when it deducted the no-fault benefits paid to Juli-Ann after it reduced the verdict by the

percentage of negligence attributed to Thompson?

## ANALYSIS

### I

▮ Hill argues he was entitled to judgment notwithstanding the verdict because the doctrine of primary assumption of risk precludes a finding of negligence on his part. Primary assumption of risk is an absolute bar to the plaintiff's recovery. "Primary assumption of the risk * * * indicates that the defendant did not even owe the plaintiff any duty of care." *Armstrong v. Mailand,* 284 N.W.2d 343, 348 (Minn.1979). If Hill owed no duty to Thompson, there was no negligence.

▮ The doctrine does not apply because Hill, as the driver, owed Thompson certain duties of reasonable care while driving on the river ice. Hill owed his passenger "the duty to operate the car with reasonable care so that the danger of riding in it is not increased or a new danger added to those assumed when the guest entered the car." *Olson v. Buskey,* 220 Minn. 155, 157, 19 N.W.2d 57, 58 (1945).

▮ Although Thompson assumed certain risks when he and Hill proceeded on to the ice, Hill was not relieved of his duties as the driver to use reasonable care, including proper lookout for dangers incident to driving on river ice. The jury could reasonably have found Hill breached his duty. First, after they spotted the steam rising from the river, Hill was negligent in not immediately driving off of the ice towards shore. Second, the area in which they were travelling did not contain any tracks which, in itself, should warn a driver that the ice might be thin or unsafe.

> The law is well settled in this jurisdiction that in examining a verdict on appeal the evidence must be considered in the light most favorable to the prevailing party and the verdict must be sustained if it is possible to do so on any reasonable theory of evidence. The verdict should not be disturbed unless it is manifestly and palpably contrary to the evidence.

*Carpenter v. Mattison,* 300 Minn. 273, 276, 219 N.W.2d 625, 628–29 (1974). Based on all of the evidence, the jury could find that it was negligent for Hill to continue driving on the ice.

### II

Hill also argues that any negligence on his part should be imputed to Thompson because the parties were involved in a joint enterprise and that everything Hill did that day was at Thompson's direction and order.

▮ The drive on Lake Winona and the Mississippi was spontaneous. Thompson was not ordering Hill to do anything. The conduct did not rise to that of a joint enterprise which requires: "(1) a mutual understanding for a common purpose, and (2) a right to a voice in the direction and control of the means used to carry out the common purpose." *Delgado v. Lohmar,* 289 N.W.2d 479, 482 (Minn.1979). As in *Delgado,* Thompson and Hill were engaged in a recreational activity on a gratuitous and voluntary basis.

### III

Hill argues the following jury instruction taken from JIG II, 310 G–S misled the jury and constituted prejudicial error:

> The violation of a duty owed another to use reasonable care is negligence. The duty of reasonable care may include, among other things, the duty of a driver of a motor vehicle to maintain a reasonable lookout.
>
> A passenger in a motor vehicle has a duty to use that care which a reasonable person riding as a passenger would use under like circumstances. It is the duty of the passenger to exercise reasonable care for his own safety. A passenger has a duty to take active measures to protect himself from danger only when it is apparent to him that he can no longer rely upon the driver for protection, as when the driver by his conduct shows that he is incompetent to drive or the driver is unmindful of or does not know of a danger known to the passenger, and

then only if the passenger becomes aware of the danger at the time and under circumstances when he could have prevented the harm.

The basis for Hill's argument is a question asked of the trial court by the jury after deliberations had begun: "Is the driver more negligent or responsible to be aware of an unknown danger?"

When the trial court asked Hill's counsel his response to the question, counsel said the question didn't make sense. The trial court then informed both counsel that he simply intended to reread the instructions on negligence and duty. Neither attorney objected nor attempted to add anything. Hill now argues that the giving of the above instruction was, in effect, a direction for a verdict in favor of Thompson.

■ Hill really argues the above instruction was misleading because the trial court declined to instruct the jury on secondary assumption of risk, defined in JIG II, 135 S as follows:

Assumption of risk is voluntarily placing (oneself) (one's property) in a position to chance known hazards. To find that a person assumed the risk you must find:

1. That he had knowledge of the risk.

2. That he appreciated the risk.

3. That he had a choice to avoid the risk or chance it and voluntarily chose to chance it.

4 J. Hetland and O. Adamson, Minnesota Practice, Minnesota Jury Instruction Guides JIG II, 135S (1974). In light of our comparative negligence statute, Minn.Stat. § 604.01, secondary assumption of risk is no longer a complete bar to a plaintiff's recovery. Instead, it is an aspect of contributory negligence. *Springrose v. Willmore*, 292 Minn. 23, 192 N.W.2d 826 (1971).

After *Springrose*, contributory negligence and secondary assumption of risk were merged.

[W]here a defendant has a duty to exercise ordinary care, that plaintiff's "secondary, express or implied" assumption of risk, as distinguished from "primary" assumption of risk, becomes part of the defense of contributory negligence and is to be measured under the comparative negligence statute, Minn.St. 604.01.

*Beckman v. V.J.M. Enterprises, Inc.*, 269 N.W.2d 37, 39 (Minn.1978). "Fault," as used in our comparative fault statute, "includes breach of warranty, *unreasonable assumption of risk not constituting an express consent*, misuse of a product and unreasonable failure to avoid an injury or to mitigate damages." Minn.Stat. § 604.01, subd. 1a (1982).

■ An instruction on assumption of risk would have focused the jury's attention on Thompson's comparative negligence and prejudiced plaintiff. The instruction would have also forced the jury to apportion fault to Thompson under both the general fault instruction and under the assumption of risk instruction. The jury would have been needlessly confused. Improper submission of secondary assumption of risk to the jury is reversible error. *Beckman*, 269 N.W.2d at 39. Based on the facts of this case, it would have been improper to submit the issue of assumption of risk to the jury.

## IV

■ Thompson contends the reduction of the judgment by $27,500, the economic loss benefits paid by Hill's automobile insurer, was incorrect. She argues the amount should be in proportion to the jury's apportionment of negligence, and, since recovery is limited to 60% of the damages assessed, only 60% of the economic loss benefits should be deducted.

The offset provision provides as follows: **Deduction of basic economic loss benefits.** With respect to a cause of action in negligence accruing as a result of injury arising out of the operation, ownership, maintenance or use of a motor vehicle with respect to which security has been provided as required by sections 65B.41 to 65B.71, there shall be deducted from any recovery the value of basic or optional economic loss benefits paid or payable, or which would be payable but for any applicable deductible.

Minn.Stat. § 65B.51, subd. 1 (Supp.1983). In *Parr v. Cloutier*, 297 N.W.2d 138 (Minn. 1980), the supreme court concluded that section 65B.51, subd. 1:

> contemplates the reduction of the judgment by an amount representing the value of all economic loss benefits paid or payable * * *.

*Id.* at 140.

*Parr* has been criticized by Professor Steenson who argues there would not be a double recovery of economic benefits if the No-Fault payments are first subtracted from the amount of damages assessed by the jury. *See* M. Steenson, *Minnesota No-Fault Automobile Insurance* 156–58 (1982); *see also* Steenson, *No-Fault in a Fault Context: Tort Actions and Section 65B.51 of the Minnesota No-Fault Automobile Insurance Act*, 2 Wm. Mitchell L.Rev. 109, 127–28 (1976).

*Parr* still controls as does *Bartel v. New Haven Township*, 323 N.W.2d 806 (Minn. 1982). In *Bartel*, the jury found the plaintiff had sustained damages in the amount of $100,000 and that the plaintiff and defendant were each 50% causally negligent. Plaintiff's no-fault insurer had paid approximately $13,500 in no-fault benefits. The trial court deducted this amount from plaintiff's $50,000 tort recovery and ordered entry of judgment in the amount of $36,438.33. *Id.* at 807. The supreme court affirmed the trial court's computations, stating that the offset provision "was specifically designed to prevent double recovery when the claimant's injuries arise out of an automobile accident." The court concluded "the trial court correctly applied the deduction from the tort damage award." *Id.* at 809.

Therefore, the trial court correctly entered judgment in favor of Thompson as follows:

| Verdict Amount | $318,000 |
|---|---|
| Less 40% | −127,200 |
| | $190,800 |
| Less No-Fault Benefits | −27,500 |
| Judgment Award | $163,300 |

### DECISION

The doctrine of primary assumption of risk does not apply because the driver owed his passenger certain duties of reasonable care while driving on the ice of the Mississippi River.

The driver and his passenger were not engaged in a joint enterprise but, instead, were engaged in recreational activity on a gratuitous and voluntary basis.

A separate instruction on secondary assumption of risk would have needlessly confused the jury.

The trial court did not err when it deducted the no-fault benefits paid to plaintiff in a wrongful death action after it reduced the verdict by the percentage of negligence attributed to the decedent.

Affirmed.