Vera L. **WAGNER, et al., Appellants,**

v.

**THOMAS J. OBERT ENTERPRISES, Respondent.**

**No. C1–85–1645.**

Court of Appeals of Minnesota.

March 25, 1986.

Review Granted May 29, 1986.

Austin D. Ditzler, Castor, Ditzler, Klukas & Scherer, Chartered, Minneapolis, for appellants.

William M. Fishman, Schermer, Schwappach, Borkon & Ramstead, Ltd., Minneapolis, for respondent.

Heard, considered and decided by the court en banc, consisting of POPOVICH, C.J., and FOLEY, WOZNIAK, LANSING, HUSPENI, FORSBERG and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Appellants Vera Wagner and Howard Wagner brought an action against respondent Thomas J. Obert Enterprises for injuries Vera Wagner sustained when she fell at a roller-skating rink owned and operated by respondent. The jury returned a verdict

in favor of respondent, and the Wagners appeal from the trial court's denial of their motion for judgment notwithstanding the verdict or, in the alternative, a new trial. We reverse and remand for new trial.

## FACTS

On April 12, 1982, Vera Wagner went roller-skating with her daughter and grandchildren at The Great Skate, a roller-skating rink in Spring Lake Park, Minnesota, which is owned and operated by respondent. On that date, there were approximately 300 to 350 rink patrons, mostly children.

The skating rink is an oblong area with a hardwood floor and a surrounding wall which is three and one-half feet high. There are three exits from the rink; each exit is six feet wide. The exits are simply breaks in the wall. The rink is one-half inch higher than the carpeted area that surrounds the rink. A metal plate connects the carpeted area and the rink floor at each exit. The metal plate is twelve inches wide and extends across the entire exit.

The accident which gives rise to this action occurred after Wagner had been at the rink for about two hours. During the two hours, Wagner entered and left the rink through the exits at least three times. When Wagner passed through an exit, she testified that she used the surrounding wall for support and stepped over the metal plate.

Wagner testified that at the end of one skating session, the program was changed and a "couples only" skate was announced. She testified that she skated towards the nearest exit, which was filled with children. As she approached the exit, children were pushing and shoving so that she was forced into the middle of the passageway where she could not use the wall for support. Wagner claimed that there were no rink attendants nearby to control or facilitate the traffic flow, and that the lights had been dimmed, making it difficult for her to see the metal plate. She testified that she attempted to step over the plate, but in-stead, she stepped directly on it, her right foot slipped, and she fell and fractured her right ankle.

Immediately after the accident, the manager of the skating rink filled out an accident report. This report was admitted into evidence over appellants' objection. The manager indicated as follows in the report:

> [Wagner] Tried To Avoid a young child at the 1st Exit, slipped and lost her balance right outside of the exit.

The manager testified that Wagner gave him this description of the accident while she was lying on the rink waiting for the ambulance immediately after the accident.

Vera Wagner claims that as a result of the accident, she incurred hospital and medical expenses in excess of $6,000, missed several months of work, and was forced to leave her full time job. Her ankle was set in a cast for several months. Dr. Carl Casper, Wagner's attending physician, testified that she suffers from arthritis and has a fifteen to twenty percent permanent partial disability in the ankle.

At trial, Wagner's medical records were admitted into evidence. Dr. Casper noted as follows in his hospital admission report:

> The patient states that she was at a roller rink. Had her skates on and was standing. She was concerned about a child on the track when she lost her balance and fell * * *.

Appellants moved in limine to exclude this reference, which the trial court denied prior to trial.

Also admitted into evidence were "skate at your own risk" signs, which are posted at the window where patrons purchase skating tickets and at various other places around the rink. The signs state as follows:

> Because of the normal risk of maintaining balance on skates and the probability of occasional contact between skaters, accidents can and do happen. You must voluntarily assume the risk of injury when you skate.

There was expert testimony at trial regarding the design and maintenance of the

exit ramps and of the lighting fixtures. Appellants' expert, an engineer, testified that the metal ramp was defective because at the time of its installation, the gauge of metal was insufficient to support the weight of the skaters and the ramp was not braced or supported. He stated that this resulted in a concave dish, making it unlikely that a skater could recover balance once the skater began slipping on the ramp. Appellants' light expert testified that the lighting fixtures were dirty and improperly maintained and did not provide a safe pattern of movement for rink patrons. Respondent's expert, an architect, testified that the metal ramp was not defective or unreasonably dangerous.

The trial court submitted instructions and a special verdict form to the jury regarding both primary and secondary assumption of risk. The result was a verdict for respondent. The jury found Wagner one hundred percent negligent. In response to the damages question, the jury calculated appellants' damages at zero.

## ISSUES

1. Did the trial court err in instructing the jury on primary assumption of risk?

2. Did the trial court err in admitting into evidence the accident report and medical records?

## ANALYSIS

### I.

Appellants claim that the trial court erred in instructing the jury on primary assumption of risk. They argue that only an instruction on secondary assumption of risk was appropriate. The trial court gave the jury the following instruction regarding primary assumption of risk:

#### INHERENT RISK OF SKATING

In the case of a paid public amusement such as a skating rink, the patron of the rink accepts those risks which are well-known and inherent aspects of the activity. The proprietor of the rink has no duty to protect the patron with regard to such inherent risks, and if the accident arises from a risk which is inherent and well-known to the plaintiff, then the proprietor is not negligent.

In answering Question 1 [Was the Defendant negligent on April 12, 1982?], if you find that the accident on April 12, 1982 arose from a risk inherent in the activity of skating and well-known to plaintiff Vera L. Wagner, then you must answer the question "No."

The instruction on secondary assumption of risk read as follows:

#### ASSUMPTION OF RISK

In deciding whether plaintiff Vera L. Wagner was negligent, you should consider whether she assumed the risk of an accident. Assumption of risk is voluntarily placing oneself in a position to chance known hazards. To find that plaintiff Vera L. Wagner assumed the risk you must find:

1. That she had knowledge of the risk.

2. That she appreciated the risk.

3. That she had a choice to avoid the risk or chance it and voluntarily chose to chance it.

Assumption of risk has two viable and distinct concepts. In *Springrose v. Willmore,* 292 Minn. 23, 24, 192 N.W.2d 826, 827 (1971), the supreme court articulated the distinctions between primary and secondary assumption of risk.

Primary assumption of risk, express or implied, relates to the initial issue of whether a defendant was negligent at all—that is, whether the defendant had any duty to protect the plaintiff from a risk of harm.

*See also Armstrong v. Mailand,* 284 N.W.2d 343, 348–49 (Minn.1979) (recognizing primary assumption of risk as a viable doctrine). Secondary assumption of risk is a question of comparative negligence. *Springrose,* 292 Minn. at 24, 192 N.W.2d at 827.

■ Primary assumption of risk is applicable where parties have voluntarily en-

tered a relationship in which the plaintiff assumes well-known, incidental risks. *Olson v. Hansen,* 299 Minn. 39, 44, 216 N.W.2d 124, 127 (1974). As to those risks, the defendant does not have a duty to protect the plaintiff. *Id.* If the plaintiff's injuries do not arise from such a risk, however, the defendant has a duty and may be found negligent.

The *Springrose* court noted that the classes of cases involving an implied primary assumption of risk are "not many." *Springrose,* 292 Minn. at 24, 192 N.W.2d at 827. The doctrine may be applicable to the situation of a baseball club owner who offers spectators a choice between screened and unscreened seats. *See Aldes v. St. Paul Ball Club, Inc.,* 251 Minn. 440, 88 N.W.2d 94 (1958). If a spectator chooses to sit in an unscreened seat and is struck and injured by a ball, the spectator would generally not be entitled to recover from the club owner. *Id.* at 441–42, 88 N.W.2d at 96. In such a situation, there is no duty on the part of the club owner, assuming the owner provided a sufficient number of screened seats. *See Swagger v. City of Crystal,* 379 N.W.2d 183 (Minn.Ct.App. 1985), *pet. for rev. denied,* (Minn. Feb. 19, 1986) (affirming trial court's JNOV on basis of primary assumption of risk against spectator injured at softball game where there was some protected seating). Even where the doctrine is applicable, however, a person assumes only those risks that are inherent in the activity and does not assume every risk arising from the negligence of others. *Moe v. Steenberg,* 275 Minn. 448, 450–51, 147 N.W.2d 587, 589 (1966).

■ Parties are entitled to a specific instruction on their theory of the case if there is evidence to support the instruction and it is in accordance with applicable law. *Sandhofer v. Abbott-Northwestern Hospital,* 283 N.W.2d 362, 367 (Minn.1979). Appellants claimed that the accident resulted from a defective metal plate at the exit, inadequate crowd control, and improper lighting. Respondent asserted that Wagner at least knew about the allegedly defec-

tive metal plate because she had passed through the exits a number of times before the accident. Because respondent's defense involved an issue of secondary assumption of risk, an instruction on secondary assumption of risk was appropriate.

■ Respondent's theory was that Wagner fell in an attempt to avoid hitting a child. Even accepting respondent's theory, we find that this fact situation does not support an instruction on primary assumption of risk. Respondent had a duty to properly supervise the rink and the exits, especially during a program change when respondent knew there would be many skaters crowding the exits. *See Johnson v. Amphitheatre Corp.,* 206 Minn. 282, 288 N.W. 386 (1939) (operator of public roller-skating rink had duty of ordinary care in supervising rink and lobby).

The case of *Thompson v. Hill,* 366 N.W.2d 628 (Minn.Ct.App.1985), further supports appellants' position. In *Thompson,* the deceased drowned when the vehicle in which he and the defendant-driver were riding broke through the ice on a river. This court held that primary assumption of risk did not apply. *Id.* at 631. The court of appeals reasoned that although the deceased assumed certain risks when he and the driver proceeded onto the ice, the driver was not relieved of his duties as the driver to use reasonable care. *Id.* Similarly, in the present case, even though Wagner assumed certain risks inherent in roller-skating, respondent still had a duty to keep the premises safe and to supervise other roller skaters.

Furthermore, there was no evidence presented that respondent offered Wagner an opportunity to avoid the risk of exiting the rink when the exit ramp was crowded and unsupervised. This case is therefore distinguishable from the case of a baseball club owner whose duty to protect patrons from batted or thrown baseballs ceases when it offers spectators a choice between screened and unscreened seats. *See Aldes,* 251 Minn. 440, 88 N.W.2d 94. Because there was no evidence in the record that Wagner had a comparable choice, respon-

dent's duty to Wagner never ceased, rendering an instruction on primary assumption of risk inappropriate.

We also believe that an instruction on assumption of risk in both its primary and secondary sense confuses the jury. The trial judge shared this concern, stating during a discussion with counsel in chambers that he was "very concerned about confusing the jury hopelessly by giving both primary and secondary assumption of risk." At least one commentator has recommended that a jury not be instructed on assumption of risk in its primary sense.

> It has been suggested that the jury might be instructed concerning assumption of risk in its primary sense, if only to caution it that the assumption of such risks should not be considered as a defense to any negligent conduct by defendant. However, it would seem preferable *not* to give such an instruction, and to leave such matters to the arguments of counsel. At best, such a cautionary instruction would probably tell the jury what it already knew. At worst, and more likely, it would be a source of confusion and potential error.

Kionka, *Implied Assumption of Risk: Does It Survive Comparative Fault?*, 1982 S.Ill.U.L.J. 371, 377 (footnotes omitted); *see Meistrich v. Casino Arena Attractions, Inc.,* 31 N.J. 44, 54–55, 155 A.2d 90, 96 (1959) ("[I]t seems too much to expect a jury to grasp the issues when assumption of risk is advanced in both of its senses.").

■ In the present case, we think it likely that the jury was not able to differentiate between the well-known, inherent risks of roller-skating, which relieve respondent of any duty (primary assumption of risk), and Wagner's attempt to exit the rink across a defective metal ramp or through an unsupervised crowd of skaters in poor lighting conditions (secondary assumption of risk). We therefore hold that under the facts of this case, the instruction on primary assumption of risk given by the trial court confused the jury and constituted reversible error. On remand for a new trial, the trial court should instruct the jury

on secondary assumption of risk and should exclude an instruction on primary assumption of risk.

■ We also hold that the trial court abused its discretion in admitting into evidence the "skate at your own risk" signs that are posted around the rink. Clearly, respondent may not escape liability by merely stating that it will not be responsible for skating injuries. Conceding that the signs contain information relevant to the issues presented, we nevertheless believe that the prejudicial effect on the jury outweighed the probative value because the jury may have improperly inferred that Wagner consented to all of the risks of roller-skating, inherent or not, when she purchased her ticket. *See* Minn.R.Evid. 403.

## II.

Because we remand this case for a new trial on all issues, certain evidentiary rulings challenged by appellants must be addressed here to avoid a repeat of error at the new trial.

■ A. The trial court admitted respondent's accident report over appellants' objection, although the basis for the trial court's admission of the report is unclear from the record. We hold that the trial court erred, and the report should not be admitted at the new trial.

The accident report of Wagner's injury, prepared by respondent's rink manager, is inadmissible hearsay. Accident reports are not made in the regular course of a business and therefore are not admissible under the business records exception. *Romero v. City of Richfield,* 253 N.W.2d 152, 153 (Minn.1977). In addition, the circumstances of preparation of the report, by a potential defendant, indicate a "lack of trustworthiness" that also would make the report inadmissible as a business record. *See* Minn.R.Evid. 803(6).

■ The reports are also inadmissible as evidence of a party admission. Minn.R. Evid. 801(d)(2)(A) allows admission of a party's *own statement.* Here, the recorded

statements are not those of Wagner but are actually the recorded statements of respondent's rink manager. *See Romero,* 253 N.W.2d at 153; *McCormick On Evidence* § 262, at 777 (E.Cleary ed.1984).

■ Respondent's manager may directly testify, however, regarding any conversations he had with Wagner following the accident. The direct testimony of the manager is admissible under Rule 801(d)(2)(A) as a party admission.

B. Appellants moved in limine to strike the portions of Dr. Casper's records that related to the cause of Wagner's injury. The trial court denied this motion, ruling that the doctor's records contained an admission of a party-opponent admissible under Minn.R.Evid. 801(d)(2)(A). Appellants were thus trapped into the position of offering all of the medical records into evidence in order to establish their claims. They also called Dr. Casper to explain his notes in an attempt to limit the potentially damaging effect of the reference to causation.

■ The trial court erred in admitting the doctor's notes regarding causation. The rule in Minnesota, frequently followed and adopted by other jurisdictions, has been stated as follows:

> [H]ospital records and charts, properly identified, are admissible when not privileged to prove diagnosis, treatment, or medical history of the patient pertinent to the medical and surgical aspects of the case but * * * hearsay and self-serving statements contained therein are not admissible to prove how an injury occurred, at least when offered by the patient.

*Brown v. St. Paul City Railway Co.,* 241 Minn. 15, 26, 62 N.W.2d 688, 696 (1954) (footnote omitted). Although the *Brown* court declined to determine whether such records are admissible for impeachment purposes or for some other purpose, the supreme court subsequently ruled that records not pertinent to prove diagnosis, treatment, or medical history are *not* admissible for *any* purpose. *Lindstrom v. Yellow Taxi Company of Minneapolis,*

298 Minn. 224, 232, 214 N.W.2d 672, 678 (1974).

In order to have the hospital records admitted either as substantive evidence or for impeachment, the defendant must show that the hospital record is admissible to prove that the statement was made by the patient. This is a matter of applying the rule pertaining to records kept in the regular course of business, and the primary issue is whether or not the specific entry involved was an entry made in the regular course of the hospital's business. If the entry concerns matters which under hospital practice are regarded as germane to medical history, diagnosis, or treatment, it is within the regular course of business. *If, on the other hand, the entry does not relate to such subjects, it is not admissible even for the limited purpose of proving that the statement was made.*

*Id.* (emphasis added). Therefore, in *Lindstrom,* the court held as follows:

> The hospital record entries in this case which relate to the cause of the accident are clearly, and by the great weight of authority, not germane to medical history, treatment, or diagnosis and are not admissible under the business-records-as-evidence act for any purpose. The entries were properly excluded by the trial court.

*Id.* at 234, 214 N.W.2d at 679. Minnesota has clearly adopted the view that portions of medical records relating to causation, when not relevant to treatment and diagnosis, are not admissible for any purpose including impeachment or as party admissions. The trial court should have stricken the portions of Dr. Casper's records relating to causation.

If the doctor's notes are not admissible, the question remains as to whether the attending physician may directly testify as to what his patient told him regarding the cause of her injury. This would constitute subterfuge of the express rule of *Brown* and *Lindstrom*; a party cannot do indirectly what it cannot do directly. The state-

ments regarding causation made to the attending physician are inadmissible hearsay.

The dissent argues that Wagner's statements to her doctor are nevertheless admissible as party admissions; we disagree. Confidential communications between a physician and his or her patient are legally privileged.

A licensed physician or surgeon * * * shall not, without the consent of his patient, be allowed to disclose any information or any opinion based thereon which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity; * * *.

Minn.Stat. § 595.02, subd. 1(d) (1984). With respect to this privilege, the Minnesota Supreme Court has stated:

Despite persistent academic and judicial criticism of this evidentiary privilege as an impediment to the ascertainment of truth, it is nevertheless our duty to enforce it to the full extent reasonably necessary for the attainment of the longstanding legislative policy for which it was created, namely, to provide a shield for safeguarding and promoting confidential communications between a patient and his attending physician.

*State v. Staat,* 291 Minn. 394, 397, 192 N.W.2d 192, 196 (1971). Even in *Brown,* the physician-patient privilege was noted as a limitation upon the introduction of medical records. "[H]ospital records * * * are admissible when not privileged * * *." *Brown,* 241 Minn. at 26, 62 N.W.2d at 696.

Even though Wagner's communications with Dr. Casper are protected by this statutory privilege, Minn.R.Civ.P. 35.03 "operates * * * to limit the extent to which such privilege may be asserted." *Lind v. Canada Dry Corp.,* 283 F.Supp. 861, 864 (D.Minn.1968). Rule 35.03 provides as follows:

If at any stage of an action a party voluntarily places in controversy the physical, mental or blood condition of himself, * * * such party thereby waives any privilege he may have in that action regarding the testimony of every person who has examined * * * him * * * *in respect of the same mental, physical or blood condition.*

(emphasis added). The waiver, however, operates only with respect to the physical condition in controversy. "[W]hatever the extent of the waiver, * * * the scope of the inquiry with plaintiffs' attending physicians is *limited* to the injuries sued upon." *Garner v. Ford Motor Co.,* 61 F.R.D. 22, 23 (D.Ala.1973) (emphasis added). Here, the purported cause of the injury is not germane to Wagner's physical condition and thus Dr. Casper "shall not, without the consent of his patient, be allowed to disclose" Wagner's conversations with him regarding the cause of her injuries. *See* Minn.Stat. § 595.02, subd. 1(d).

In addition, we note that Minn.R.Evid. 803(4) was written in a manner that is consistent with our view that the waiver of the physician-patient privilege is narrow. Rule 803(4) permits the admission of the following hearsay materials:

Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof *insofar as reasonably pertinent to diagnosis or treatment.*

(emphasis added).

If Dr. Casper were not Wagner's attending physician, the medical privilege would not apply. *See, e.g., State v. Emerson,* 266 Minn. 217, 223, 123 N.W.2d 382, 386 (1963) ("Where a medical examination is for some reason other than diagnosis and treatment, we have held the privilege does not obtain."); *Hierl v. McClure,* 238 Minn. 335, 341, 56 N.W.2d 721, 724 (1953) (party admissions made to physician who was not the party's attending physician are not covered by the privilege); *Cherpeski v. Great Northern Railway Co.,* 128 Minn. 360, 364, 150 N.W. 1091, 1092 (1915) (plaintiff's statements to defendant's physicians who examined plaintiff to determine whether he could return to work and not to provide

treatment to him, are not privileged communications). It is clear that Dr. Casper was Wagner's attending physician and thus her statements to him that are not related to diagnosis or treatment are protected by the physician-patient privilege and are not automatically waived under Minn.R.Civ.P. 35.03.

Because we grant a new trial on all issues, including damages, we need not address the damages issue raised by appellants.

## DECISION

The trial court erred in instructing the jury on primary assumption of risk and in its evidentiary rulings. We grant appellants a new trial on all issues.

Reversed and remanded.

HUSPENI, Judge (dissenting).

I respectfully dissent and would affirm the jury verdict and the trial court evidentiary rulings.

Primary Assumption of Risk

I believe a jury instruction on primary assumption of risk was appropriate under the facts of this case.

The doctrine of primary assumption of risk is a viable one, and in many cases is a matter for the trial court to resolve. *See, e.g., Swagger v. City of Crystal,* 379 N.W.2d 183 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Feb. 19, 1986) (this court affirmed the trial court's judgment notwithstanding the verdict against the plaintiff on the basis of primary assumption of risk). The Minnesota Supreme Court recognizes, however, that a jury instruction on primary assumption of risk is appropriate in certain cases. *See, e.g., Griffiths v. Lovelette Transfer Co.,* 313 N.W.2d 602, 605 (Minn.1981); *Murphy v. City of Minneapolis,* 292 N.W.2d 751, 755 n. 2 (Minn.1980).

Patrons of inherently dangerous sporting events are generally subject to the doctrine of primary assumption of risk. *Springrose v. Willmore,* 292 Minn. 23, 24, 192 N.W.2d 826, 827 (1971). Courts have consistently applied the doctrine of primary assumption of risk to patrons of skating rinks. *See Moe v. Steenberg,* 275 Minn. 448, 450–51, 147 N.W.2d 587, 589 (1966) (quoting *Schamel v. St. Louis Arena Corp.,* 324 S.W.2d 375, 378 (Mo.Ct.App.1959)). Many courts consider that some bumping or jostling is an ordinary risk of roller-skating. *See, e.g., Hills v. Skate Country East, Inc.,* 430 So.2d 1035 (La.Ct.App.), *writ denied,* 438 So.2d 568 (La.1983) (roller skater assumed risk of being bumped); *Farinelli v. Laventure,* 342 Mass. 157, 172 N.E.2d 825 (1961) (jury could determine based on evidence that ten-year-old roller skater did not assume risk of being hit by skaters who were violating rink rules by skating in a line when the rink operator recognized his obligation to deter such lines); *Stemmler v. State,* 32 A.D.2d 861, 861, 301 N.Y.S.2d 403, 404 (App.Div.1969) (the risk "[t]hat another participant in roller skating might strike the injured claimant was inherent in using the rink"); *Pieraccini v. Crenshaw,* 204 Tenn. 327, 321 S.W.2d 546 (1959) (roller-skating rink operator is not responsible for injuries to a patron who falls as a result of being bumped by another patron, unless operator had notice of dangerous conduct of patron).

The present case is unusual because the cause of the accident was seriously disputed. There is evidence in the record to support a number of different causal theories. At trial, respondent's main theory was that Wagner fell while she was trying to avoid a child, that this kind of a fall was a risk inherent in the activity of roller-skating, and that respondent had no duty to Wagner with regard to such an inherent risk. There is evidence in the record from which the jury could have concluded that the sole cause of the accident was Wagner's attempt to avoid colliding with a child. If the jury reached this conclusion on the causation issue, it could have further concluded that falling to avoid a child is a well-known and inherent risk of roller-skating. Therefore, based upon well-recognized principles of law, the doctrine of primary assumption of risk was applicable

and respondent was entitled to a specific instruction on its theory of the case. *See Sandhofer v. Abbott-Northwestern Hospital,* 283 N.W.2d 362, 367 (Minn.1979).

I agree with the majority that the jury could have found that there was inadequate crowd control at the rink exit and, as a result of the overcrowding, Wagner fell trying to avoid a child. Further, the jury could have found merit in Wagner's alternative theories regarding the rink's lighting and the metal plate. Obviously, if the jury determined that any of the three theories propounded by Wagner was in fact the cause of the accident, it would have found the primary assumption of risk doctrine inapplicable. In that event, other instructions in the jury charge, which are not the subject of this appeal, would have adequately informed the jury of the applicable law.

I believe *Thompson v. Hill,* 366 N.W.2d 628 (Minn.Ct.App.1985) is distinguishable from the present case. The activity involved in *Thompson* (driving an automobile on ice) is not the type to which the supreme court has determined the doctrine of primary assumption of risk applies. *See Springrose,* 292 Minn. at 24, 192 N.W.2d at 827; *Moe,* 275 Minn. at 450, 147 N.W.2d at 589.

I do not share the majority's concern that the trial court's instructions confused the jury. In *Kohoutek v. Hafner,* 383 N.W.2d 295 (Minn.1986), the Minnesota Supreme Court recognized that trial courts have considerable latitude in formulating jury instructions and refused to grant a new trial on the basis of jury confusion. The supreme court noted that "[i]t is unnecessary that every possible opportunity for misapprehension be guarded against. If the charge fairly lays down the law of the case, it is sufficient." *Id.* at 300 (quoting *Cameron v. Evans,* 241 Minn. 200, 209, 62 N.W.2d 793, 799 (1954)).

I do not believe that the jury here was confused. The instructions correctly set forth the doctrine of primary assumption of risk. The jury was required to determine whether the accident arose from a risk that was inherent and well-known to a roller-skating participant or from respondent's negligence as alleged by Wagner. If the jury determined that the accident did arise from a risk inherent in the activity of roller-skating, it was instructed to answer the special interrogatory regarding respondent's negligence in the negative. If it determined that respondent was negligent with respect to crowd control, lighting, or the condition of the metal plate, the jury was adequately instructed on the doctrine of comparative negligence.

Evidentiary Rulings

I find no abuse of discretion in the trial court's rulings admitting into evidence the accident report, the doctor's notes[1] and the skating rink signs.

Pursuant to Minn.R.Evid. 801(d)(2)(A), Wagner's statement that she tried to avoid a child at one of the exits and slipped is admissible as an admission of a party opponent. A record of the admission should also be admissible, assuming that a proper foundation is laid.

I agree with the majority that the doctor's notes here are not admissible under the business records hearsay exception. Entries in medical records regarding the manner in which an accident occurred usually serve no medical purpose, and therefore are inadmissible under the business records hearsay exception. *Lindstrom v. Yellow Taxi Co. of Minneapolis,* 298 Minn. 224, 233–34, 214 N.W.2d 672, 678–79 (1974). However, if an entry comes within one of the other exceptions to the hearsay rule or does not even constitute hearsay in the first instance, it is admissible. McCormick on Evidence § 313, at 883 (3d ed. 1984). I believe that here the doctor's notes regarding Wagner's statement that she "was concerned about a child on the track when she lost her balance and fell" is an admission which is admissible under Rule 801(d)(2)(A). The doctor could properly testify to the fact that Wagner made the admission, and therefore a record

1. I note that Judge Wozniak joins the three dissenters on this issue.

of the admission should also be admissible assuming that a proper foundation is laid.

Neither *Brown v. Saint Paul City Railway Co.*, 241 Minn. 15, 62 N.W.2d 688 (1954) nor *Lindstrom* prohibits the admission of the doctor's notes as an admission of a party opponent. In *Brown*, the supreme court held that hearsay and self-serving statements contained in hospital records are not admissible to prove how an injury occurred, at least not when they are offered by the patient. *Brown*, 241 Minn. at 26, 62 N.W.2d at 696. The supreme court further stated:

> Whether they are admissible for impeachment purposes or for some other purpose not here involved we need not now determine.

*Id.* at 26–27, 62 N.W.2d at 696. *Brown* only addressed the applicability of the business records hearsay exception to medical records that were not admissible under another hearsay exception. In *Brown*, unlike in the present case, the injured plaintiff offered the medical records into evidence to support her case. The statements in *Brown* were not admissions of a party opponent. In *Lindstrom*, the defendant sought to introduce hospital records concerning the cause of the accident under the business records hearsay exception when the treating physicians who made the entries were unavailable. 298 Minn. at 232, 214 N.W.2d at 678. There were no other applicable hearsay exceptions in *Lindstrom*.

I cannot agree with the majority's narrow interpretation of Minn.R.Civ.P. 35.03. Rule 35.03 specifically states that a party who voluntarily places his physical condition in controversy "thereby waives *any* privilege he may have" regarding the testimony of anyone who has examined him "in respect of the same * * * physical * * * condition." (Emphasis added).

Finally, I cannot conclude that the trial court abused its discretion in allowing the skating rink signs into evidence pursuant to Minn.R.Evid. 401. The signs were relevant to both Wagner's knowledge of the risks involved in roller-skating and to whether Wagner's accident arose from an inherent risk of roller-skating. I do not believe the signs misled the jury about the applicable standards of law. It does not appear that the trial court clearly abused its discretion in weighing the probative value of the signs against the risk of unduly prejudicing the jury. *See* Minn.R.Evid. 403; *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 725 (Minn.1983).

Damages Issue

The majority does not reach the damages issue raised by appellants, because it grants a new trial on other grounds. Because I find no reversible error in the jury instructions or the evidentiary rulings, I address the damages issue. The Wagners argue that the jury's award of no damages indicates that the jury was influenced by prejudice and passion and warrants a new trial. If a jury determines that there are no grounds for liability, and there is evidence to support this finding, the failure of the jury to properly assess damages does not necessarily show prejudice or render the verdict perverse. *Wefel v. Norman*, 296 Minn. 506, 507–08, 207 N.W.2d 340, 341 (1973). Here, there is evidence to support the jury's finding of no liability. I believe the trial court properly denied the Wagners' motion for a new trial based on a perverse verdict.

LANSING, Judge (dissenting).

I join in the dissent of Judge Huspeni.

FORSBERG, Judge (dissenting).

I join in the dissent of Judge Huspeni.

Wozniak, Judge (concurring in part and dissenting in part).

I concur with the majority opinion except that I agree with the dissent that the doctor's notes are admissible under Minn.R. Evid. 801(d)(2)(A).